## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JULIAN JENKINS and<br>LYDIA PERRYMAN, individually and on behalf<br>of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>DAVITA, INC.,<br><br>                    Defendant. | CIVIL ACTION NO. 1:25-cv-1358<br><br>CLASS ACTION<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Julian Jenkins and Lydia Perryman, individually and on behalf of all others similarly situated, bring this Class Action Complaint and allege the following against defendant DaVita, Inc. ("DaVita" or "Defendant"), based upon personal knowledge with respect to Plaintiffs and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action against DaVita for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI was exfiltrated by the ransomware group Interlock, which simultaneously disrupted DaVita's information technology systems on April 12, 2025.

2.      DaVita failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiffs seek, among other things, orders requiring DaVita to fully and accurately disclose the nature of the information that has been compromised and to adopt

sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.      On April 14, 2025, DaVita reported to the Securities and Exchange Commission that two days earlier, it "became aware of a ransomware incident that has encrypted certain elements of our network."

4.      Less than two weeks later, Interlock claimed to have over 20 terabytes of sensitive patient data from DaVita for sale on the dark web.

5.      DaVita knowingly obtained sensitive PII and PHI and had a resulting duty to securely maintain that information in confidence. Plaintiffs and Class Members would not have provided their PII and PHI to DaVita if they had known that DaVita would not ensure that it used adequate security measures.

6.      Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and PHI were exposed in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to DaVita's data security policies and practices.

## PARTIES

7.      Plaintiff Julian Jenkins is a resident of Charleston, South Carolina. Mr. Jenkins received medical treatment from DaVita between May 2024 and January 2025. At some point after the Data Breach, Mr. Jenkins received suspicious text messages about a non-existent medical appointment, which encouraged him to click on a link to a website. He also received a

suspicious email encouraging him to click on a link to a website that purportedly contained loan documents.

8.    Plaintiff Lydia Perryman is a resident of Yuma, Arizona. Ms. Perryman has received medical treatment from DaVita on numerous occasions between April 2023 and the present. When she recently contacted DaVita about her treatment, a DaVita representative told her that unauthorized outsiders had gained access to DaVita's computer and telephone systems, and that those systems were inoperative as a result.

9.    Defendant DaVita, Inc. is a Delaware corporation, with its principal place of business in Denver, Colorado.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is different from DaVita's citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interests and costs.

11.    This Court has general personal jurisdiction over DaVita because DaVita is registered to do business, and maintains its principal place of business, in Denver, Colorado.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because DaVita is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

**The Data Breach**

13.     DaVita describes itself as a "comprehensive kidney care provider."[1] On its website, DaVita claims that "[a]s of December 31, 2024, DaVita served approximately 281,100 patients at 3,166 outpatient dialysis centers, of which 2,657 centers were located in the United States and 509 centers were located in 13 other countries worldwide."[2]

14.     Due to the nature of the services it provides, DaVita acquires and electronically stores PII and PHI. DaVita was therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiffs' and Class Members' express written consent.

15.     On April 14, 2025, DaVita reported to the Securities and Exchange Commission that, on April 12, 2025, it "became aware of a ransomware incident that has encrypted certain elements of our network."[3]

16.     On or around April 25, 2025, Interlock disclosed having over 20 terabytes of DaVita data for sale on the dark web, comprised of over 200 million "customer rows."[4] Interlock leaked 1.5 terabytes of the data concurrent with that disclosure.[5]

---

[1] https://investors.davita.com/ (last visited Apr. 29, 2025).

[2] *Id.*

[3] DaVita, Inc. Form 8-K, https://www.sec.gov/Archives/edgar/data/927066/000119312525079593/d948299d8k.htm (last visited Apr. 29, 2025).

[4] Interlock Ransomware Say It Stole 20TB of DaVita Healthcare Data, https://hackread.com/interlock-ransomware-stole-davita-healthcare-data/ (last visited Apr. 29, 2025).

[5] *Id.*

17.     DaVita has not disclosed any details of the Data Breach. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, DaVita has taken to secure the PII and PHI still in its possession. Plaintiffs seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiffs' and Class Members' interests, and ensure that DaVita has proper measures in place to prevent similar incidents from occurring in the future.

## DaVita's Security Representations

18.     DaVita's website includes a "Notice of Privacy Practices," which discloses the ways in which DaVita uses or shares its patients' PII and PHI.[6] That notice makes no reference to sharing that information with cybercriminals.

19.     The Notice further specifies DaVita's responsibilities. DaVita notes that it is "required by law to maintain the privacy and security of [its patients] PHI," and claims that it will not "share your information other than as described here unless you tell us that we can in writing."[7]

## DaVita Stores Plaintiffs' and Class Members' PII and PHI

20.     DaVita obtained and stored a massive amount of PII and PHI. As a condition of using DaVita's services, it required that clients entrust it with highly confidential PII and PHI.

---

[6] Notice of Privacy Practices, https://www.davita.com/privacy-practices (last visited Apr. 29, 2025).

[7] *Id.*

21.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, DaVita assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure.

22.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on DaVita to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

23.     DaVita was aware that the PII and PHI it collected are highly sensitive and of significant value to those who would use it for wrongful purposes.

24.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[8] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web."

25.     The ramifications of DaVita's failure to keep Plaintiffs' and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

---

[8] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Apr. 29, 2025).

26.    Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

27.    DaVita knew, or should have known, the importance of safeguarding PII and PHI entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiffs and Class Members because of a breach. DaVita failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiffs and Class Members to Identity Theft and Out-of-Pocket Losses**

28.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

29.    Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, DaVita's policies and practices with respect to maintaining the security of Plaintiffs' and Class Members' PII and PHI were reckless, or at the very least, negligent.

30.    In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of DaVita's misfeasance.

31.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[9]

32.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.  losing the inherent value of their PII and PHI;

    b.  identity theft and fraud resulting from the theft of their PII and PHI;

    c.  costs associated with the detection and prevention of identity theft;

    d.  costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

    e.  lowered credit scores resulting from credit inquiries following fraudulent activities;

    f.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

    g.  the continued imminent injury flowing from potential fraud and identity theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

---

[9] 2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com /risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Apr. 29, 2025).

**DaVita's Lax Security Violates HIPAA**

33.     DaVita had a non-delegable duty to ensure that all PHI it collected and stored was secure.

34.     DaVita is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

35.     These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

36.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

37.     HIPAA requires that DaVita implement appropriate safeguards for this information.

38.     Despite these requirements, DaVita failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, DaVita failed to:

    a. maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b. adequately protect Plaintiffs' and Class Members' PHI;

c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.  implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.  protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h.  ensure compliance with the electronic PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i.  train all members of its workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

39.    DaVita failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiffs' and Class Members' PHI.

**DaVita Violated FTC Guidelines**

40.    The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited DaVita from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII and PHI is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

10

41.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[10]

42.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established data security guidelines for businesses.[11] The guidelines reflect that businesses should protect the PII and PHI that they keep; properly dispose of PII and PHI that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

43.     The FTC further recommends that companies not maintain PII and PHI longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[12]

44.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting

---

[10] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Apr. 29, 2025).

[11] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Apr. 29, 2025).

[12] FTC, *Start With Security*, *supra*.

from these actions further clarify the measures businesses must take to meet their data security obligations.

45.    DaVita failed to properly implement basic data security practices. DaVita's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

46.    DaVita was at all times fully aware of its obligation to protect Plaintiffs' and Class Members' PII and PHI because of its position as a healthcare services provider. DaVita was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b):

All United States residents whose PII and/or PHI was compromised in the Data Breach.

48.    Excluded from the Class are DaVita, any entity in which DaVita has a controlling interest, and DaVita's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

49.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

50.    **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. DaVita claims to have been treating over 280,000 patients just months before the Data Breach. All Class Members' names and addresses are available from

DaVita's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

51.     **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether and to what extent DaVita had a duty to protect the PII and PHI of Class Members;

b.  Whether DaVita was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI;

c.  Whether DaVita had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.  Whether DaVita took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII and PHI;

e.  Whether DaVita failed to adequately safeguard the PII and PHI of Class Members;

f.  Whether DaVita failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.  Whether DaVita adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

h.  Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of DaVita's wrongful conduct;

i.  Whether Plaintiffs and Class Members are entitled to restitution because of DaVita's wrongful conduct;

j.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.  Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

52. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII and PHI, like that of every other Class Member, was disclosed by DaVita. Plaintiffs' claims are typical of those of the other Class Members because, inter alia, all Class Members were injured through DaVita's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

53. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against DaVita to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

54. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because DaVita has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. DaVita's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on DaVita's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

55. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available

14

methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like DaVita. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

56.     The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because DaVita would necessarily gain an unconscionable advantage in non-class litigation, since DaVita would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

57.     The litigation of Plaintiffs' claims is manageable. DaVita's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

58.     Adequate notice can be given to Class Members directly using information maintained in DaVita's records.

59.     Unless a class-wide injunction is issued, DaVita may continue to maintain inadequate security with respect to the PII and PHI of Class Members, DaVita may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and DaVita may continue to act unlawfully as set forth in this Complaint.

60.     DaVita has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## COUNT I
### NEGLIGENCE
### (on behalf of Plaintiffs and the Class)

61.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

62.     DaVita knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing DaVita's security protocols to ensure that Plaintiffs' and Class Members' PII and PHI in DaVita's possession was adequately secured and protected, that Plaintiffs' and Class Members' PII and PHI on DaVita's networks was not accessible to criminals without authorization, and that DaVita's employees tasked with maintaining such

information were adequately trained on security measures regarding the security of Plaintiffs' and Class Members' PII and PHI.

63.     Plaintiffs and Class Members entrusted their PII and PHI to DaVita with the understanding that DaVita would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

64.     DaVita knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiffs' and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiffs and Class Members.

65.     DaVita also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII and PHI.

66.     A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape.

67.     Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. DaVita knew or should have known of the inherent risks in collecting and storing Plaintiffs' and Class Members' PII and PHI, the critical importance of providing adequate security of that information, the necessity for encrypting PII and PHI stored on DaVita's systems, and that it had inadequate IT security protocols in place to secure Plaintiffs' and Class Members' PII and PHI.

68.     DaVita's misconduct created a foreseeable risk of harm to Plaintiffs and Class Members. DaVita's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

69.     Plaintiffs and Class Members had no ability to protect their PII and PHI that was in DaVita's possession.

70.     DaVita was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

71.     DaVita had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII and PHI within its possession was compromised and precisely the type(s) of information that were compromised.

72.     DaVita had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII and PHI.

73.     DaVita systematically failed to provide adequate security for data in its possession.

74.     DaVita, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII and PHI within its possession.

75.     DaVita, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII and PHI.

76.     DaVita, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII and PHI within its possession might have been compromised and precisely the type of information compromised.

77.     DaVita's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII and PHI to be compromised.

78.    But for all of DaVita's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiffs' and Class Members' PII and PHI would not have been compromised.

79.    Plaintiffs never transmitted their own unencrypted PII and PHI over the internet or any other unsecured source.

80.    Following the Data Breach, Plaintiffs' PII and PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PII and PHI, and Plaintiffs are unable to prevent its further dissemination. Plaintiffs' PII and PHI are forever compromised.

81.    But for the Data Breach, Plaintiffs would not have incurred the loss and publication of their PII and PHI and other injuries.

82.    There is a close causal connection between DaVita's failure to implement security measures to protect Plaintiffs' and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PII and PHI were accessed and compromised as the proximate result of DaVita's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

83.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

84.     As a result of DaVita's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII and PHI, which are still in the possession of third parties, will be used for fraudulent purposes.

85.     Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

86.     Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling DaVita to institute appropriate data collection and safeguarding methods and policies with regard to PII and PHI; and (2) compelling DaVita to provide detailed and specific disclosure of what types of PII and PHI have been compromised as a result of the data breach.

**COUNT II**
**NEGLIGENCE *PER SE***
**(on behalf of Plaintiffs and the Class)**

87.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

88.     Under the FTC Act, 15 U.S.C. § 45, DaVita had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII and PHI.

89.     Section 5 of the FTC Act prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as DaVita, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of DaVita's duty to protect Plaintiffs and Class Members' PII and PHI.

90.    DaVita breached its respective duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PII and PHI.

91.    DaVita violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards. DaVita's conduct was particularly unreasonable given the nature and amount of PII and PHI DaVita had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach.

92.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

93.    But for DaVita's wrongful and negligent breach of its duties owed, Plaintiffs and Class Members would not have been injured.

94.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of DaVita's breach of its duties. DaVita knew or should have known that it was failing to meet its duties and that the Data Breach would cause Plaintiffs and Class Members to suffer the foreseeable harms associated with the exposure of their PII and PHI.

95.    Similarly, HIPAA imposes on DaVita a duty to follow HIPAA standards for privacy and security practices so as to protect Plaintiffs' and Class Members' PHI.

96.    DaVita violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with the applicable regulations detailed above. Defendant's

conduct was particularly unreasonable given the nature and amount of PHI that DaVita collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach.

97.    DaVita's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

98.    As a direct and proximate result of DaVita's negligence per se, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries.

<u>**COUNT III**</u>
**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiffs and the Class)**

99.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

100.    As a condition of obtaining services from DaVita, Plaintiffs and Class Members were obligated to provide their PII and PHI to DaVita.

101.    In so doing, Plaintiffs and Class Members entered into implied contracts with DaVita by which DaVita agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised or stolen.

102.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with DaVita.

103.    Plaintiffs and Class Members entered into the implied contracts with the reasonable expectation that DaVita's data and cybersecurity practices and policies were reasonable and consistent with industry standards. Plaintiffs and Class Members believed that

DaVita would use part of the money paid to DaVita to fund adequate and reasonable data and cybersecurity practices.

104.     Plaintiffs and Class Members would not have provided and entrusted their sensitive and confidential information to DaVita in the absence of the implied contract or implied terms between them and DaVita. The safeguarding of Plaintiffs' and Class Members' PII and PHI was critical to realize the intent of the parties.

105.     DaVita breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect their PII and PHI.

106.     As a direct and proximate result of DaVita's breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

107.     As a direct and proximate result of DaVita's described breach of implied contract, Plaintiffs and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT IV
## INVASION OF PRIVACY
### (on behalf of Plaintiffs and the Class)

108.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

109.    Plaintiffs and Class Members had a legitimate expectation of privacy to their PII and PHI and were entitled to the protection of this information against disclosure to unauthorized third parties.

110.    DaVita owed a duty to those individuals whose PII and PHI DaVita collected and stored as a condition of their medical treatment, including that of Plaintiffs and Class Members, to keep their PII and PHI confidential.

111.    DaVita failed to protect, and released to unknown and unauthorized third parties Plaintiffs' and Class Members' PII and PHI.

112.    DaVita allowed unauthorized and unknown third parties access to and examination of the PII and PHI of Plaintiffs and Class Members, by way of DaVita's failure to protect that PII and PHI.

113.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII and PHI of Plaintiffs and Class Members is highly offensive to a reasonable person.

114.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and Class Members disclosed their PII and PHI to DaVita as a condition of their medical treatment, but privately with an intention that the PII and PHI would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and Class Members

24

were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

115.    The Data Breach at the hands of DaVita constitutes an intentional interference with Plaintiffs' and Class Members's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

116.    DaVita acted with a knowing state of mind when it permitted the Data Breach to occur because it acted with actual knowledge that its information security practices were inadequate and insufficient.

117.    Because DaVita acted with this knowing state of mind, it had notice and knew its inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and Class Members.

118.    As a proximate result of the above acts and omissions of DaVita, the PII and PHI of Plaintiffs and Class Members was disclosed to third parties without authorization, causing Plaintiffs and Class Members to suffer damages.

119.    Unless and until it is enjoined, and restrained by order of this Court, DaVita's wrongful conduct will continue to cause irreparable injury to Plaintiffs and Class Members in that the PII and PHI maintained by DaVita can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and Class Members have no adequate remedy at law for those injuries in that a judgment for monetary damages will not end the invasion of Plaintiffs' and Class Members' privacy.

120.     As a direct and proximate result of DaVita's invasion of their privacy, Plaintiffs and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT V
### BREACH OF CONFIDENCE
#### (on behalf of Plaintiffs and the Class)

121.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

122.     At all times during Plaintiffs' and Class Members' dealings with DaVita, DaVita was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' PII and PHI that Plaintiffs and Class Members provided to DaVita.

123.     As alleged herein and above, DaVita's relationships with Plaintiffs and Class Members were governed by terms and expectations that Plaintiffs' and Class Members' PII and PHI would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

124.     Plaintiffs and Class Members provided their PII and PHI to DaVita with the explicit and implicit understandings that DaVita would protect it, and not permit the PII and PHI to be disseminated to any unauthorized third parties.

125.     Plaintiffs and Class Members also provided their PII and PHI to DaVita with the explicit and implicit understandings that DaVita would take precautions to protect that PII and PHI from unauthorized disclosure.

126.     DaVita voluntarily received in confidence Plaintiffs' and Class Members' PII and PHI with the understanding that it would not be disclosed or disseminated to the public or any unauthorized third parties.

127.    Due to DaVita's failure to prevent the Data Breach from occurring, Plaintiffs' and Class Members' PII and PHI was disclosed to and misappropriated by unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

128.    As a direct and proximate cause of DaVita's actions and/or omissions, Plaintiffs and Class Members have suffered damages.

129.    But for DaVita's disclosure of Plaintiffs' and Class Members' PII and PHI in violation of the parties' understanding of confidence, their PII and PHI would not have been compromised, stolen, viewed, accessed, and/or used by unauthorized third parties. The Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' PII and PHI, as well as the resulting damages.

130.    The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of DaVita's unauthorized disclosure of Plaintiffs' and Class Members' PII and PHI. DaVita knew or should have known its means of accepting and securing Plaintiffs' and Class Members' PII and PHI were inadequate as they relate to, at the very least, securing servers and other equipment containing Plaintiffs' and Class Members' PII and PHI.

131.    As a direct and proximate result of DaVita's breach of its confidence with Plaintiffs and Class Members, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to determine how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to

mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in DaVita's possession and are subject to further unauthorized disclosures so long as DaVita fails to undertake appropriate and adequate measures to protect that PII and PHI; and (viii) present and future costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the compromise of the PII and PHI that has resulted from the Data Breach for the remainder of Plaintiffs' and Class Members' lives.

132.    As a direct and proximate result of DaVita's breaches of confidence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses. As a direct and proximate result of DaVita's breaches of confidence, Plaintiffs and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT VI
### VIOLATION OF COLORADO CONSUMER PROTECTION ACT
### COLO. REV. STAT. § 6-1-101, *et seq.*
#### (on behalf of Plaintiffs and the Class)

133.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

134.    Plaintiffs allege this Count solely in the alternative to Plaintiffs' breach of contract claim.

135.    Plaintiffs and Class Members conferred a monetary benefit on DaVita by providing DaVita with their PII and PHI.

136.    DaVita appreciated that a monetary benefit was being conferred upon it by Plaintiffs and Class Members and accepted that monetary benefit.

137.    DaVita's acceptance of that benefit under the facts and circumstances detailed herein make it inequitable for DaVita to retain that benefit without payment of the value thereof. Specifically, DaVita enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, DaVita instead chose to raise its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of DaVita's choice.

138.    Under the principles of equity and good conscience, DaVita should not be permitted to retain the monetary benefit belonging to Plaintiffs and Class Members, because DaVita failed to implement appropriate data management and security measures.

139.    DaVita acquired Plaintiffs' and Class Members' PII and PHI through inequitable means in that it failed to disclose the inadequate security practices alleged herein.

140.    If Plaintiffs and Class Members knew that DaVita had not secured their PII and PHI, they would not have agreed to provide their PII and PHI to DaVita.

141.    Plaintiffs and Class Members have no adequate remedy at law.

142.    As a direct and proximate result of DaVita's conduct, Plaintiffs and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to determine how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the

prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII and PHI, which remain in DaVita's possession and is subject to further unauthorized disclosures so long as DaVita fails to take appropriate and adequate measures to protect PII and PHI in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of the PII and PHI resulting from the Data Breach for the remainder of Plaintiffs' and Class Members' lives.

143.    As a direct and proximate result of DaVita's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

## COUNT VII
### VIOLATION OF COLORADO CONSUMER PROTECTION ACT
### COLO. REV. STAT. § 6-1-101, *et seq.*
### (on behalf of Plaintiffs and the Class)

144.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

145.    The Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1)(l), *et seq.*, prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service.

146.    DaVita is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq.*

147.    Plaintiffs and Class Members are current and former DaVita patients who, for treatment purposes, provided sensitive and confidential PII and PHI to DaVita, which DaVita collected, stored, and maintained at its Colorado headquarters.

148.    DaVita is engaged in, and its acts and omissions affect trade and commerce. DaVita's relevant acts, practices and omissions complained of in this action were done in the course of DaVita's business of marketing, offering for sale, and selling services throughout the United States.

149.    In the conduct of its business, trade, and commerce, and in the sale of services to consumers, DaVita engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of services to consumers. Plaintiffs and other Class Members purchased these services. Plaintiffs and Class Members are actual or potential consumers as defined by Colo. Rev. Stat § 6-1-113(1), *et seq*.

150.    In the conduct of its business, trade, and commerce, and in the sale of services to consumers, DaVita collected and stored highly personal and private information, including PII and PHI belonging to Plaintiffs and Class Members.

151.    DaVita knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII and PHI of Plaintiffs and Class Members and that the risk of a data breach was substantial.

152.    DaVita should have disclosed this information regarding its computer systems and data security practices because DaVita was in a superior position to know the facts related to those practices, and Plaintiffs and Class Members could not reasonably be expected to learn or discover those facts.

153.    As alleged herein, DaVita engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and the furnishing of healthcare services to consumers in violation of the Colorado Consumer Protection Act, including but not limited to the following:

    a.  failing to adequately secure patient PII and PHI;

    b.  failing to maintain adequate computer systems and data security practices to safeguard patients' PII and PHI;

    c.  failing to disclose the material information, known at the time of the collection and retention of the patient PII and PHI, that its computer systems would not adequately protect and safeguard patient PII and PHI; and

    d.  inducing consumers to use DaVita's services by failing to disclose, and misrepresenting the material fact that DaVita's computer systems and data security practices were inadequate to safeguard patients' sensitive personal information from theft.

154.    By engaging in the conduct described herein, DaVita has violated the Colorado Consumer Protection Act by, among other things:

    a.  omitting material facts regarding the services it sold;

    b.  omitting material facts regarding the security of the transactions between DaVita and its patients who received medical treatment;

    c.  misrepresenting material facts in the furnishing or sale of products, goods or services to consumers;

d.  engaging in conduct that was likely to mislead consumers acting reasonably under the circumstances;

e.  engaging in conduct which created a likelihood of confusion or of misunderstanding;

f.  engaging in conduct with the intent to induce consumers to use DaVita's services;

g.  maintaining unfair practices that caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers; and/or

h.  other unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices to be shown at trial.

155.    DaVita systemically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiffs and Class Members.

156.    DaVita's actions in engaging in the conduct detailed above were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members.

157.    As a direct result of DaVita's violation of the Colorado Consumer Protection Act, Plaintiffs and Class Members have suffered actual damages, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to determine how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or

unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in DaVita's possession and is subject to further unauthorized disclosures so long as DaVita fails to undertake appropriate and adequate measures to protect that PII and PHI; and (viii) present and future costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the compromise of the PII and PHI resulting from the Data Breach for the remainder of Plaintiffs' and Class Members' lives.

158.    As a result of DaVita's violations of the Colorado Consumer Protection Act, Plaintiffs and Class Members are entitled to, and seek, injunctive relief, including but not limited to:

a.    An order that DaVita engage third-party security auditors/penetration testers as well as experienced and qualified internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on DaVita systems on a periodic basis, ordering DaVita to promptly correct any problems or issues detected by such third-party security auditors;

b.    An order that DaVita engage third-party security auditors and experienced and qualified internal security personnel to run automated security monitoring;

c.  An order that DaVita audit, test, and train its security personnel regarding new or modified procedures;

d.  An order that DaVita segment data by, among other things, creating firewalls and access controls so that if one area of DaVita is compromised, hackers cannot gain access to other portions of DaVita's systems;

e.  An order that DaVita purge, delete, and destroy in a reasonably secure manner patient data that is not necessary for its provision of services;

f.  An order that DaVita conduct regular database scanning and securing checks;

g.  An order that DaVita routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and,

h.  An order requiring DaVita to meaningfully educate its patients about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps patients must take to protect themselves.

159.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices of DaVita alleged herein, Plaintiffs and Class Members seek relief under Colo. Rev. Stat. § 6-1-113, including, but not limited to, the greater of actual damages, statutory damages, or treble damages for bad faith conduct, injunctive relief, and attorneys' fees and costs, as allowable by law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a.  for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b.  for equitable relief enjoining DaVita from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c.  for equitable relief compelling DaVita to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d.  for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.  for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.  for prejudgment interest on all amounts awarded; and

g.  such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: April 30, 2025                    Respectfully submitted,


                                         _____/s/ Victor S. Woods_____
                                         Victor S. Woods
                                         **BAILEY GLASSER LLP**
                                         209 Capitol Street
                                         Charleston, WV 25301
                                         (304) 345-6555
                                         vwoods@baileyglasser.com

Bart D. Cohen (district bar application forthcoming)
**BAILEY GLASSER LLP**
1622 Locust Street
Philadelphia, PA  19103
(215) 274-9420
bcohen@baileyglasser.com

*Attorneys for Plaintiffs and the Proposed Class*