# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

JULIAN JENKINS, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DAVITA, INC.

Defendant.

Case No. 1:25-cv-01358-DDD-SBP

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement is entered into by and between Defendant DaVita, Inc. and Plaintiffs Godwin Iloka,[1] Julian Jenkins, Gregory Leafe, Brenda Pearson, and Lydia Perryman, both individually and on behalf of the Settlement Class,[2] in the consolidated case of *Jenkins v. DaVita, Inc.*, No. 1:25-cv-01358, currently pending in the United States District Court for the District of Colorado.

## I. Recitals

1. This Settlement arises from a criminal ransomware attack perpetrated against DaVita in April 2025. On or around April 12, 2025, DaVita discovered that the ransomware gang Interlock perpetrated the Ransomware Attack on its systems.

2. On April 14, 2025, DaVita filed a Form 8-K with the United States Securities and Exchange Commission disclosing the Attack.

[1] Plaintiff Iloka has been previously identified pseudonymously as "G.I." in Court filings in this matter.
[2] Capitalized terms used throughout this Agreement are defined in Section II.

3. On April 30, 2025, Plaintiffs Jenkins and Perryman filed the first class action lawsuit related to the Ransomware Attack—the above-referenced *Jenkins* action—asserting various common law and state statutory claims on behalf of themselves and a putative nationwide class.

4. Between April 30, 2025 and June 1, 2025, five additional class actions were filed related to the Ransomware Attack: *Reid v. DaVita, Inc.*, No. 1:25-cv-01362 (D. Colo.) (filed Apr. 30, 2025); *Pearson v. DaVita, Inc.*, No. 1:25-cv-01488 (D. Colo.) (filed May 12, 2025); *Fortin v. DaVita, Inc.,* No. 1:25-cv-01607 (D. Colo.) (filed May 21, 2025); *Natoli v. DaVita, Inc.*, No. 1:25-cv-01687 (D. Colo.) (filed May 29, 2025); and *G.I. v. DaVita, Inc.*, No. 4:25-cv-00309 (W.D. Mo.) (filed May 1, 2025).

5. On June 2, 2025, the plaintiffs in *Jenkins* and the four other actions then pending against DaVita in the United States District Court for the District of Colorado moved for consolidation under Federal Rule of Civil Procedure 42(a) and for the appointment of interim co-lead counsel.

6. On June 4, 2025, Plaintiff Iloka voluntarily dismissed the *G.I.* action, pending in the United States District Court for the Western District of Missouri, without prejudice.

7. On June 16, 2025, the Court entered an order consolidating the cases in the United States District Court for the District of Colorado, appointing interim co-lead counsel and Plaintiffs' executive committee, and directing Plaintiffs to file a Consolidated Amended Complaint to supersede all the complaints filed in the consolidated actions.

8. On July 30, 2025, Plaintiffs filed the Consolidated Amended Complaint ("CAC"). In the CAC, Plaintiffs allege that they are (or were) patients of DaVita; that they provided their information to DaVita as a condition of service; that DaVita failed to properly secure and safeguard

their and putative class members' Personal Information, resulting in the Ransomware Attack and publication of their Personal Information on the dark web; and that they were harmed as a result of the Ransomware Attack. Based on these allegations, the CAC asserts common law and state statutory claims on behalf of Plaintiffs and a putative nationwide class and several state subclasses.

9. In late July 2025, the Parties agreed to mediate before experienced mediator Bruce Friedman on October 6, 2025, in Los Angeles.

10. After completing its investigation, in early August 2025, DaVita began directly notifying potentially impacted individuals of the Ransomware Attack.

11. Between August 7 and 21, 2025, six additional complaints were filed against DaVita related to the Ransomware Attack: *Jones v. DaVita, Inc.*, 1:25-cv-02458 (D. Colo.) (filed Aug. 7, 2025); *Hartley v. DaVita, Inc.*, 1:25-cv-02513 (D. Colo.) (filed Aug. 12, 2025); *Frazier v. DaVita, Inc.*, 1:25-cv-02540 (D. Colo.) (filed Aug. 14, 2025); *Riden v. DaVita, Inc.*, 1:25-cv-02622 (D. Colo.) (filed Aug. 20, 2025); *Ellman v. DaVita, Inc.*, 1:25-cv-02629 (D. Colo.) (filed Aug 21, 2025); and *Barboza* v. *DaVita, Inc*., 1:25-cv-02633 (D. Colo.) (filed Aug. 21, 2025).

12. On August 29, 2025, the Parties jointly moved to consolidate these six additional related cases with the *Jenkins* proceeding. On September 17, 2025, the Court consolidated the cases.

13. Leading up to the scheduled mediation, the Parties exchanged informal discovery pursuant to Federal Rule of Evidence 408 to better evaluate the strengths and weaknesses of the claims asserted in the CAC and DaVita's defenses to the same.

14. On October 6, 2025, the Parties engaged in a day-long, in-person mediation session with Mr. Friedman in Los Angeles. After a full-day mediation, the Parties reached a settlement in principle, the terms of which are reflected in this Settlement Agreement.

15. DaVita denies all claims asserted against it in the Litigation, denies all allegations of wrongdoing and liability, and denies all material allegations of the CAC.

16. Plaintiffs and Class Counsel believe that the legal claims asserted in the Litigation have merit. Class Counsel have investigated the facts relating to the claims and defenses alleged in the Litigation and events underlying it, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Litigation, and have conducted a thorough assessment of the strengths and weaknesses of the Parties' respective positions.

17. The Parties desire to settle the Litigation and all claims arising out of or related to the Ransomware Attack, the allegations and subject matter of the CAC, and the Litigation on the terms and conditions set forth herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continued litigation.

18. Plaintiffs and Class Counsel, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Litigation through trial, the risks and costs associated with further prosecution of the Litigation, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that a settlement with DaVita on the terms set forth herein is fair and reasonable and in the best interest of Plaintiffs and the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.

19. The Parties agree and understand that neither this Settlement Agreement, nor the Settlement it represents, shall be construed as an admission by DaVita of any wrongdoing whatsoever, including an admission of a violation of any statute or law or of liability on the claims

or allegations in the Litigation or any other similar claims in other proceedings, or that any such claims would be suitable for class treatment.

20. The Parties, by and through their respective duly authorized counsel of record, and intending to be legally bound hereby, agree that the Litigation, and all matters and claims in the CAC, and all matters and claims arising out of or related to the allegations and/or subject matter of the CAC and Litigation, and all matters and claims that could have been asserted in the Litigation, shall be settled, compromised, and dismissed, on the merits and with prejudice, upon the following terms and conditions.

## II. Definitions

21. As used herein and in the related documents attached hereto as exhibits, the following terms have the meaning specified below:

a. "Agreement" or "Settlement Agreement" means this Settlement and Release Agreement.

b. "Attack" or "Ransomware Attack" means the criminal ransomware attack perpetrated against DaVita in April 2025 by the ransomware gang Interlock that was discovered by DaVita on or around April 12, 2025 and publicly disclosed by DaVita in an April 14, 2025 Form 8-K.

c. "Attorneys' Fees, Costs, and Expenses Award" means the amount of attorneys' fees, expenses, and reimbursement of Litigation Costs awarded by the Court to be paid to Class Counsel from the Settlement Fund. The combined amount of the Attorneys' Fees, Costs, and Expenses Award and the Supplemental Attorneys' Fees Award shall constitute full and complete satisfaction of Class Counsel's claim or request (and any request made by any other attorneys) for payment of attorneys' fees, expenses, and Litigation Costs incurred in respect of the Litigation.

d. "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the U.S. federal government.

e. "CAC," "Complaint," "Consolidated Complaint" or "Consolidated Amended Complaint" means the Consolidated Amended Class Action Complaint and Demand for Jury Trial filed at Docket Entry No. 26 in the Litigation.

f. "CAFA Notice" means a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.*, to be served upon the appropriate state or federal officials. The CAFA Notice shall be prepared and issued by the Settlement Administrator, and all costs related to preparation and issuance of the CAFA Notice shall be considered Notice and Claims Administration Costs to be paid solely from the Settlement Fund.

g. "Claim Check" shall have the meaning given in Paragraph 64.

h. "Claim Form" means the form Members of the Settlement Class must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein, and substantially in the form of **Exhibit A** to this Settlement Agreement. The Claim Form shall require a sworn affirmation under the laws of the United States but shall not require a notarization or any other form of verification.

i. "Claim Payment" shall have the meaning given in Paragraph 64.

j. "Claims Deadline" means the deadline for filing claims set at a date certain ninety (90) Days from the Notice Date, as defined in Paragraph 21(gg).

k. "Claims Period" means the period for filing claims up until a date certain ninety (90) Days from the Notice Date, as defined in Paragraph 21(gg).

l. "Claimants" shall have the meaning given in Paragraph 62.

m. "Class Counsel" means Bart D. Cohen of Bailey Glasser, LLP; J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC; Gary Klinger of Milberg PLLC; Maureen Brady of McShane & Brady, LLC; Mark Reich of Levi & Korsinsky LLP; and Marc Edelson of Edelson Lechtzin LLP.

n. "Class List" shall have the meaning given in Paragraph 69.

o. "Class Notice" means the notice of this Settlement to be provided to Settlement Class Members, which shall include the Long-Form Notice and Postcard/Email Notice, substantially in the form attached hereto as **Exhibits B, C,** and **D**, respectively.

p. "Class Representatives" or "Plaintiffs" means Plaintiffs Godwin Iloka, Julian Jenkins, Gregory Leafe, Brenda Pearson, and Lydia Perryman.

q. "Court" means the United States District Court for the District of Colorado.

r. "Credit Monitoring" shall have the meaning set forth in Paragraph 36.

s. "DaVita" or "Defendant" means DaVita, Inc.

t. "DaVita's Counsel" or "Defendant's Counsel" means King & Spalding LLP, 1180 Peachtree Street NE, Suite 1800, Atlanta, GA 30309.

u. "Day(s)" means calendar days, but does not include the day of the act, event, or default from which the designated period of time begins to run. Further, and notwithstanding the above, when computing any period of time prescribed or allowed by this Settlement Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a holiday observed by the U.S. federal government, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or holiday observed by the U.S. federal government.

v. "Documented Out-of-Pocket Losses" means losses recoverable under Paragraphs 29 through 34 of this Settlement Agreement.

w. "Effective Date" means the date defined in Paragraph 127 of this Settlement Agreement.

x. "Final" with respect to a judgment or order means that all of the following have occurred: (i) the time expires for noticing any appeal; and (ii) if there is an appeal or appeals, completion, in a manner that finally affirms and leaves in place the judgment or order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing en banc, or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand).

y. "Final Approval Hearing" means the hearing to determine whether the Settlement should be given final approval and whether the applications of Class Counsel for an Attorneys' Fees, Costs, and Expenses Award, a Supplemental Attorneys' Fees Award, and Service Awards should be approved.

z. "Final Approval Order" means the order of the Court finally approving this Settlement.

aa. "Final Judgment" means the dismissal with prejudice of the Litigation filed by Plaintiffs in the United States District Court for the District of Colorado, entered in connection with the Final Approval Order.

bb. "Litigation" means the consolidated action captioned *Jenkins v. DaVita, Inc.*, No. 1:25-cv-01358 (D. Colo.), currently pending in the United States District Court for the District of Colorado, and all actions consolidated with that action.

cc. "Litigation Costs" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, mediating, and settling the Litigation, and with obtaining a Final Approval Order and Final Judgment.

dd. "Long-Form Notice" means the written notice substantially in the form of **Exhibit B** to this Settlement Agreement.

ee. "Net Settlement Fund" means the amount of money that remains in the Settlement Fund after money is paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement; (ii) any taxes owed by the Settlement Account; (iii) any Service Awards approved by the Court; (iv) any Attorneys' Fees, Costs, and Expenses Award approved by the Court; and (v) Credit Monitoring.

ff. "Notice and Claims Administration Costs" means all approved reasonable costs incurred or charged by the Settlement Administrator in connection with providing notice to Members of the Settlement Class and administering the Settlement.

gg. "Notice Date" means 60 days after the Preliminary Approval Order is entered, and is the date by which the Notice Program must be implemented by the Settlement Administrator.

hh. "Notice Program" means the notice program described in Section X.

ii. "Objection(s)" shall have the meaning set forth in Paragraphs 81 and 82.

jj. "Objection Deadline" means the date by which Settlement Class Members must file with the Court their Objection to the Settlement for that Objection to be effective and timely. The Objection Date shall be sixty (60) days after the Notice Date.

kk. "Opt-Out Date" means the date by which requests for exclusion from the Settlement Class must be postmarked in order to be effective and timely. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date shall be sixty (60) days after the Notice Date.

ll. "Opt-Outs" shall have the meaning set forth in Paragraph 90.

mm. "Parties" means Plaintiffs and Defendant collectively. "Party" refers either to Plaintiffs or Defendant.

nn. "Parties' Counsel" means Class Counsel and Defendant's Counsel collectively.

oo. "Personal Information" means name, address, date of birth, Social Security number, health insurance-related information, other identifiers internal to DaVita, health condition, other treatment information, dialysis lab test results, tax identification numbers, and/or images of checks written to DaVita.

pp. "Postcard Notice" and "Email Notice" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form as attached as **Exhibits C** and **D** to this Settlement Agreement.

qq. "Preliminary Approval Date" means the date the Preliminary Approval Order has been entered by the Court.

rr. "Preliminary Approval Order" means the order certifying the proposed Settlement Class for settlement purposes, preliminarily approving this Settlement Agreement, approving the Notice Program, and setting a date for the Final Approval Hearing, entered in a format the same as or substantially similar to that of the Proposed Preliminary Approval Order attached hereto as **Exhibit E**.

ss. "Pro Rata Cash Payment" shall have the meaning set forth in Paragraph 35.

tt. "Related Entities" means Defendant's past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, including those entities with whom Defendant has a management services agreement and those entities that Defendant controls, as well as each of Defendant's and these entities' respective

predecessors, successors, assigns, shareholders, members, trustees, directors, officers, employees, principals, agents, attorneys, representatives, providers, advisors, consultants, contractors, vendors, partners, insurers, reinsurers, and subrogees, and includes, without limitation, any person or entity related to any such entity who is, was, or could have been named as a defendant in this Litigation.

uu. "Released Claims" shall have the meaning set forth in Paragraph 116.

vv. "Release" shall have the meaning set forth in Paragraph 116.

ww. "Releasing Parties" shall be defined as Plaintiffs, those Settlement Class Members who do not validly and timely opt out of the Settlement Class, and all of their respective present or past spouses, heirs, executors, representatives, estates, administrators, predecessors, successors, assigns, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, partners, attorneys, accountants, financial and other advisors, underwriters, lenders, auditors, investment advisors, legal representatives, companies, firms, trusts, and corporations and/or anyone claiming through them or acting or purporting to act for them or on their behalf.

xx. "Released Parties" means Defendant and the Related Entities, as well as their respective present or past joint ventures, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, administrators, employees, agents, consultants, insurers, reinsurers, directors, managing directors, officers, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns, and companies, firms, trusts, and corporations, whether foreign or domestic, that are owned or controlled by Defendant.

yy. "Request for Exclusion" shall have the meaning set forth in Paragraph 88.

zz. "Service Award" shall have the meaning set forth in Paragraph 95.

aaa. "Settlement" means the settlement reflected by this Settlement Agreement.

bbb. "Settlement Account" shall have the meaning set forth in Paragraph 47.

ccc. "Settlement Administrator" means the class action settlement administrator retained by Class Counsel to carry out the Notice Program and administer the Settlement, along with any other responsibilities as set forth in this Settlement Agreement, as agreed to by the Parties, or as ordered by the Court. After reviewing bids, Class Counsel, subject to Court approval, have agreed to engage Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator in this matter.

ddd. "Settlement Class" means all U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack. Excluded from the Class are: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's affiliates, parents, subsidiaries, officers, directors, legal representatives, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly excludes themselves from the Settlement.

eee. "Settlement Class Member(s)" or "Member(s) of the Settlement Class" means all persons who are members of the Settlement Class. The Settlement Class consists of approximately 2,394,674 persons.

fff. "Settlement Fund" means the non-reversionary sum of ten million United States Dollars ($10,000,000.00), to be paid by, or on behalf of, Defendant as specified in this Settlement Agreement, including any interest accrued thereon after payment, which shall be used as the only source of payment for all costs of the Settlement other than reimbursements for valid

and approved Documented Out-of-Pocket Losses and payment of any Supplemental Attorneys' Fees Award.

ggg. "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, the Postcard Notice, the Long-Form Notice, and the Claim Form, among other things as agreed upon by the Parties and approved by the Court as required.

hhh. "Supplemental Payment Amount" shall have the meaning set forth in Paragraphs 38 through 44.

iii. "Supplemental Attorneys' Fees Award" means the award of attorneys' fees Class Counsel may seek pursuant to Paragraph 93 of this Agreement. The combined amount of the Attorneys' Fees, Costs, and Expenses Award and the Supplemental Attorneys' Fees Award shall constitute full and complete satisfaction of Class Counsel's claim or request (and any request made by any other attorneys) for payment of attorneys' fees, expenses, and Litigation Costs incurred in respect of the Litigation.

**III. Certification of the Settlement Class**

22. For settlement purposes only, Plaintiffs will request that the Court certify the Settlement Class.

23. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then Plaintiffs' request for certification of the Settlement Class will be withdrawn and deemed to be of no force or effect for any purpose in this or any other proceeding. In that event, Defendant reserves the right to assert any and all objections and defenses to certification of a class, and neither the Settlement Agreement nor any order or other action relating to the Settlement Agreement shall be offered by any person in any litigation or other

proceeding against Defendant or any Related Entities as evidence in support of a motion to certify any class.

**IV. The Settlement Fund**

24. A non-reversionary total sum of ten million United States Dollars ($10,000,000.00) (the "Settlement Fund") shall be paid by or on Defendant's behalf into the Settlement Account. First, within thirty (30) days of the Preliminary Approval Date, an initial payment of at least three hundred thousand United States Dollars ($300,000.00) shall be paid by Defendant or on Defendant's behalf into the Settlement Account to cover initial Notice and Claims Administration Costs. Any remaining amounts not used for initial Notice and Claims Administration Costs shall be retained in the Settlement Account for further use and distribution as provided for in this Agreement. Second, within ten (10) Business Days after the Effective Date, the remaining balance of the Settlement Fund shall be paid by Defendant or on Defendant's behalf into the Settlement Account. The timing set forth in this provision is contingent upon the receipt of a Form W-9 and payment instructions from the Settlement Administrator for the Settlement Account by the date that the Preliminary Approval Order is issued. If Defendant does not receive this information by the date that the Preliminary Approval Order is issued, the initial payment specified by this paragraph shall be made within thirty (30) days of Defendant receiving this information.

25. As further described in this Settlement Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement as approved by Class Counsel and the Court, as required, (ii) any taxes owed by the Settlement Account, (iii) any Service Awards approved by the Court, (iv) any Attorneys' Fees, Costs, and Expenses Award approved by the Court, (v) any Credit Monitoring validly claimed by Settlement Class Members, and (vi) Pro Rata Cash

Payments. The Settlement Administrator will maintain control over the Settlement Fund and shall be responsible for all disbursements, including the payment of any applicable taxes.

**V. Settlement Benefits**

26. When submitting a claim, Settlement Class Members may elect to receive both Documented Out-of-Pocket Losses and a Pro Rata Cash Payment. Additionally, Settlement Class Members may also elect to receive Credit Monitoring. If a Settlement Class Member does not submit a valid claim or elects to opt-out, the Settlement Class Member will release his or her claims against Defendant without receiving a benefit provided for by this Agreement.

27. To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form. A Claim Form shall be submitted online at the Settlement Website or by U.S. mail and must be submitted on the Settlement Website or postmarked no later than the Claims Deadline.

28. Claims will be subject to review for completeness and eligibility by the Settlement Administrator. For timely claims that are deficient, the Settlement Administrator will provide the Settlement Class Member making the claim an opportunity to cure the deficiencies in the manner set forth in Paragraph 62 below.

29. **Documented Out-of-Pocket Losses:** All Settlement Class Members may file a claim for reimbursement of Documented Out-of-Pocket Losses, to be paid from the Supplemental Payment Amount. Such compensation for Documented Out-of-Pocket Losses is limited to a maximum of $2,500 per individual Settlement Class Member. Such compensation for Documented Out-of-Pocket Losses is only recoverable where: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss is fairly traceable to the Ransomware Attack; (iii) the loss occurred between April 11, 2025 and the Claims Deadline; and (iv) the individual making the claim for the loss made reasonable efforts to avoid the loss or seek reimbursement for the loss,

including, but not limited to, disputing unauthorized transactions and exhausting all existing credit monitoring insurance and identity theft insurance. Documented Out-of-Pocket Losses may include, without limitation, the unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft, fraud, falsified tax returns, real estate title fraud, financial fraud, government benefits fraud, or other misuse of the Settlement Class Member's Personal Information that is fairly traceable to the Ransomware Attack. For the avoidance of doubt, no payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

30. Individuals who elect to submit a claim for reimbursement of Documented Out-of-Pocket Losses must provide to the Settlement Administrator all information required to evaluate the claim as set forth in the Claim Form, including but not limited to: (i) the Settlement Class Member's name and current address; (ii) documentation supporting the unreimbursed cost(s), loss(es), or expenditure(s); (iii) a brief description of the nature of the cost(s), loss(es), or expenditure(s); (iv) an explanation of how each loss claimed is fairly traceable to the Ransomware Attack; and (v) an attestation under penalty of perjury that (a) the individual claiming the loss believes the loss is fairly traceable to the Ransomware Attack, (b) the individual claiming the loss has not been previously reimbursed for the loss, and (c) that all the information provided on the Claim Form is true and accurate to the best of the individual's knowledge, information, and belief.

31. Documentation supporting Documented Out-of-Pocket Losses may include receipts or other documentation not "self-prepared" by the individual claiming the loss that documents the unreimbursed cost(s), loss(es), or expenditure(s) incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to qualify for reimbursement for Documented Out-of-Pocket Losses.

32. In assessing what losses qualify as "fairly traceable" to the Ransomware Attack, the Settlement Administrator shall consider (i) the timing of the loss, including whether the loss occurred on or after April 11, 2025, through the date of the Claim Form; (ii) whether the loss involved the possible misuse of the type of Personal Information potentially accessed in the Ransomware Attack; (iii) the explanation provided as to how the loss is fairly traceable to the Ransomware Attack; (iv) the nature of the loss, including whether the loss could be reasonably incurred as a result of the Ransomware Attack; (v) any other factor that the Settlement Administrator considers to be relevant; and (vi) any other factor that Class Counsel and Defendant's Counsel jointly agree to instruct the Settlement Administrator to consider. The Settlement Administrator shall have the sole discretion and authority to determine whether claimed Documented Out-of-Pocket Losses are valid and fairly traceable to the Ransomware Attack.

33. Nothing in this Settlement Agreement shall be construed as requiring Defendant to provide, and Defendant shall not provide, for a double payment for the same loss or injury that was reimbursed or compensated by any other source.

34. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if his or her claim is rejected by the Settlement Administrator for any reason and the Settlement Class Member fails to cure his or her claim in accordance with the instructions given by the Settlement Administrator by the deadline set by the Settlement Administrator, the claim will be rejected and the Settlement Class Member's claim will be treated as if he or she elected a Pro Rata Cash Payment only.

35. **Pro Rata Cash Payment:** In addition to or instead of Documented Out-of-Pocket Losses, a Settlement Class Member may claim a Pro Rata Cash Payment. The amount of each Pro Rata Cash Payment shall be calculated by dividing the amount of money remaining in the

Settlement Fund after the payment of Notice and Claims Administration Costs, any taxes owed by the Settlement Account, any Service Awards, any Attorneys' Fees, Costs, and Expenses Award, and the cost of Credit Monitoring (the "Net Settlement Fund"), by the number of eligible claims. The amount of each Pro Rata Cash Payment will be adjusted upward or downward based upon the number of valid claims filed.

36. **Credit Monitoring:** In addition to electing any of the other benefits, Settlement Class Members may claim three (3) years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. The cost of Credit Monitoring shall be paid from the Settlement Fund.

37. **Residual Funds:** To the extent any monies remain in the Net Settlement Fund more than one hundred twenty (120) Days after the distribution of all Claim Checks and Claim Payments to the Claimants, the Parties shall meet and confer regarding the appropriate use of such residual funds, including the possibility of using residual funds for additional Settlement Class Member benefits, if practicable, or whether any such funds should be distributed to an appropriate non-profit organization (as agreed upon by the Parties and approved by the Court). Given that the intention is that the Net Settlement Fund will be fully paid out to Settlement Class Members claiming Pro Rata Cash Payments, it is anticipated that the only residual funds will be from uncashed Claim Checks or unnegotiated Claim Payments.

## VI. The Supplemental Payment Amount

38. In addition to making the payments described in Paragraph 24 above, the Supplemental Payment Amount will be paid by Defendant or on Defendant's behalf. The Supplemental Payment Amount shall be paid no later than ten (10) Business Days following the

later of (i) the Effective Date and (ii) the Court's ruling on Class Counsel's request for the Supplemental Attorneys' Fees Award.

39. The Supplemental Payment Amount shall be calculated as the sum of (i) any valid claims for the reimbursement of Documented Out-of-Pocket Losses made pursuant to Paragraphs 29 through 34 of this Agreement and (ii) any Supplemental Attorneys' Fees Award the Court approves.

40. The Supplemental Payment Amount shall in no event exceed five million United States Dollars ($5,000,0000.00). In the event the sum of (i) any valid claims for the reimbursement of Documented Out-of-Pocket Losses made pursuant to Paragraphs 29 through 34 of this Agreement and (ii) any Supplemental Attorneys' Fees Award the Court approves exceeds five million United States Dollars ($5,000,0000.00), the Settlement Administrator shall reduce each valid claim for reimbursement of Documented Out-of-Pocket Losses on a *pro rata* basis so that the sum of the total amount of reimbursements of Documented Out-of-Pocket Losses and the Supplemental Attorneys' Fees Award equals five million United States Dollars ($5,000,0000.00).

41. Any of the Supplemental Payment Amount that remains in the Settlement Account more than one hundred twenty (120) Days after the distribution of all Claim Checks and Claim Payments to the Claimants, including from any uncashed Claim Checks or unnegotiated Claim Payments, shall be promptly returned to Defendant.

42. During the Claims Period, the Settlement Administrator shall provide the Parties' Counsel with weekly reports detailing the number and dollar amount of claims for Documented Out-of-Pocket Losses submitted, including the number and dollar amount of claims that have been deemed valid by the Settlement Administrator.

43. No later than thirty (30) Days following the Claims Deadline, the Settlement Administrator shall provide the Parties' Counsel with a final report detailing the number and dollar amount of valid claims for Documented Out-of-Pocket Losses submitted.

44. The Supplemental Payment Amount shall be used by the Settlement Administrator to pay for: (i) Documented Out-of-Pocket Losses and (ii) any Supplemental Attorneys' Fees Award approved by the Court. Once paid by Defendant, the Settlement Administrator will maintain control over the Supplemental Payment Amount and shall be responsible for all disbursements, including the payment of any applicable taxes.

**VII. Limitation of Defendant's Liability**

45. For the avoidance of doubt, Defendant's total monetary liability under this Agreement shall not exceed fifteen million United States Dollars ($15,000,000.00), inclusive of any Service Awards; any Attorneys' Fees, Costs, and Expenses Award; any Supplemental Attorneys' Fees Award; any Notice and Claims Administration Costs; any payments made or other benefits provided to Settlement Class Members, whether they be Credit Monitoring, Pro Rata Cash Payments, reimbursements for Documented Out-of-Pocket Losses, or otherwise; and any taxes applicable to the Settlement Fund.

46. In no event shall Defendant have any obligation whatsoever to make any payment, distribution, or contribution, or incur any cost, expense, or liability, related to the Settlement, administration of the Settlement, or any other aspect of this Settlement Agreement, or to Plaintiffs, the Settlement Class, Class Counsel, or the Settlement Administrator, in excess of the Settlement Fund and the Supplemental Payment Amount.

**VIII. The Settlement Account**

47. **Custody of the Settlement Fund and the Supplemental Payment Amount:** Both the Settlement Fund and the Supplemental Payment Amount shall be deposited in an appropriate

qualified settlement fund or funds established by the Settlement Administrator (collectively, the "Settlement Account") but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund and the Supplemental Payment Amount are distributed pursuant to this Settlement Agreement or returned to those who paid the Settlement Fund and the Supplemental Payment Amount in the event this Settlement Agreement is voided, terminated, or cancelled.

48. **Effect of Termination:** In the event this Settlement Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason: (i) the Class Representatives and Class Counsel shall have no obligation to repay any of the Notice and Claims Administration Costs that have been paid or incurred in accordance with the terms and conditions of this Settlement Agreement prior to such termination; (ii) any amounts remaining in the Settlement Account, after payment of Notice and Claims Administration Costs already incurred in accordance with the terms and conditions of this Settlement Agreement, including all interest earned on the Settlement Account net of any taxes, shall be returned to Defendant; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

49. **Non-Reversionary:** The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Defendant in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as described in Section XVII of this Settlement Agreement. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Defendant.

50. **Payment/Withdrawal Authorization:** No amounts may be withdrawn from the Settlement Account unless (i) expressly authorized by the Settlement Agreement, or (ii) as may be approved by the Court. Class Counsel may authorize the periodic payment of actual reasonable

Notice and Claims Administration Costs from the Settlement Account as such expenses are invoiced without further order of the Court. For avoidance of doubt, all Notice and Claims Administration Costs shall be paid from the Settlement Fund rather than the Supplemental Payment Amount. The Settlement Administrator shall provide the Parties' Counsel with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Account before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

51. **Payments to Settlement Class Members:** The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Settlement Fund and the Supplemental Payment Amount to Claimants pursuant to this Settlement Agreement.

52. **Treasury Regulations and Fund Investment:** The Parties agree that the Settlement Account is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Account and paying from the Settlement Fund any taxes owed by the Settlement Account. For avoidance of doubt, all taxes shall be paid from the Settlement Fund rather than the Supplemental Payment Amount. The Parties agree that the Settlement Account shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Account as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Account shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation at a financial institution determined by the Settlement Administrator and approved by the Parties.

Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check-clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Account, including any interest accrued thereon and payments made pursuant to this Settlement Agreement, upon request of any of the Parties.

53. **Taxes:** All taxes owed by the Settlement Account shall be paid out of the Settlement Fund, shall be considered part of the Notice and Claims Administration Costs, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Administrator shall indemnify and hold harmless the Parties and the Parties' Counsel for any taxes related to the Settlement (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and the Parties' Counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Settlement Agreement or derived from or made pursuant to the Settlement Account. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him or her of the receipt of funds from the Settlement Account pursuant to this Settlement Agreement. Under no circumstances will Defendant have any liability for taxes or tax expenses under the Settlement Agreement.

54. **Limitation of Liability**

a. Defendant and Defendant's Counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission, or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Account; (iii) the formulation, design, or terms of the disbursement of the

Supplemental Payment Amount, Settlement Fund, or Settlement Account; (iv) the determination, administration, calculation, or payment of any claims asserted against the Supplemental Payment Amount, Settlement Fund, or Settlement Account, whether they be for Credit Monitoring, Pro Rata Cash Payments, reimbursements for Documented Out-of-Pocket Losses, or otherwise; (v) any losses suffered by, or fluctuations in the value of the Settlement Account; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Account or the filing of any returns. Defendant also shall have no obligation to communicate with Settlement Class Members and others regarding amounts paid under the Settlement.

b. The Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Account; (iii) the formulation, design, or terms of the disbursement of the Supplemental Payment Amount, Settlement Fund, or Settlement Account; (iv) the determination, administration, calculation, or payment of any claims asserted against Supplemental Payment Amount, Settlement Fund, or Settlement Account, whether they be for Credit Monitoring, Pro Rata Cash Payments, reimbursements for Documented Out-of-Pocket Losses, or otherwise; (v) any losses suffered by or fluctuations in the value of the Settlement Account; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Account or the filing of any returns.

## IX. Settlement Administration

55. All agreed-upon and reasonable Notice and Claims Administration Costs will be paid from the Settlement Fund.

56. Class Counsel represent that (i) they solicited competitive bids for Settlement administration, including Notice and Claims Administration Costs; (ii) they believe that Email Notice (where available) and Postcard Notice is appropriate under the circumstances; and (iii) they will direct the Settlement Administrator to utilize other appropriate forms of notice if practicable, in order to contain the Notice and Claims Administration Costs while still providing effective notice to the Settlement Class Members.

57. Within ten (10) Days following Plaintiffs' filing of this Agreement with the Court, the Settlement Administrator, on behalf of the Defendant, shall cause the CAFA Notice to be served upon the appropriate state or federal officials. All expenses incurred in connection with the preparation and service of the CAFA Notice shall be paid from the Settlement Fund.

58. The Settlement Administrator will provide written notice of the Settlement terms to all Settlement Class Members for whom Defendant has provided a valid mailing address or email address. The Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing.

59. The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of the Settlement Agreement and any orders of the Court.

60. The Settlement Administrator will administer the settlement process in accordance with the terms of the Settlement Agreement and as directed by Class Counsel, subject to the Court's supervision and direction as circumstances may require.

61. The Settlement Administrator will review and evaluate each Claim Form for validity, timeliness, and completeness.

62. If, in the determination of the Settlement Administrator, a Settlement Class Member submits a timely but deficient Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty-one (21) Days from the date of the written notice to cure the deficiencies. The Settlement Administrator will provide notice of deficiencies concurrently to the Parties' Counsel. If the deficiencies are not cured within the twenty-one (21) Day period, then the claim will be deemed invalid and denied by the Settlement Administrator. All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed deficient but timely cured, shall be considered "Claimants."

63. The Settlement Administrator will maintain records of all Claim Forms submitted until three hundred and sixty (360) Days after the Effective Date. Claim Forms may be provided to the Court upon request and to Defendant, Class Counsel, and Defendant's Counsel to the extent necessary to resolve claims determination issues pursuant to this Settlement Agreement. Class Counsel or the Settlement Administrator will provide other reports or information that the Court may require or that the Parties may reasonably request.

64. Subject to the terms and conditions of this Settlement Agreement, within forty-five (45) Days after the later of (i) the Effective Date and (ii) the Court's ruling on Class Counsel's request for the Supplemental Attorneys' Fees Award, the Settlement Administrator shall mail or otherwise provide a payment via check ("Claim Check") or electronic means (a "Claim Payment") to each Claimant.

65. Each Claim Check shall be mailed to the address provided by the Claimant on his or her Claim Form. All Claim Checks issued under this section shall be void if not negotiated within ninety (90) Days of their date of issue and shall contain a legend to that effect. Claim Checks issued pursuant to this section that are not negotiated within ninety (90) Days of their date

of issue shall not be reissued. The Settlement Administrator may also provide for payment of Claim Payments via electronic means.

66. For any Claim Check or Claim Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Claim Check or Claim Payment within thirty (30) Days after the check or electronic payment is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Claim Check or Claim Payment.

## X. Notice to Settlement Class Members

67. The Parties agree the following Notice Program provides reasonable notice of the Settlement to the Settlement Class.

68. Direct notice shall be provided to Settlement Class Members via Email Notice, for Settlement Class Members for whom the Settlement Administrator is provided a valid email address by Defendant, and otherwise by U.S. Mail, for Settlement Class Members for whom the Settlement Administrator has a valid address. For any Settlement Class Members for whom Defendant does not have a valid email or U.S. Mail address, notice shall be given by publication, by way of a targeted social media campaign jointly developed by the Parties and the Settlement Administrator.

69. Within thirty (30) Days of the entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the names, email addresses (if available), and last addresses known to Defendant for the Settlement Class Members (the “Class List”). The Settlement Administrator shall, by using the National Change of Address database maintained by the U.S. Postal Service (the “Postal Service”), obtain updates, if any, to the mailing addresses.

a. Defendant shall provide the Class List to the Settlement Administrator only for the purposes of Settlement administration. The Settlement Administrator shall not provide the Class List to Class Counsel.

b. To the extent Class Counsel learns the identity, address, or email address of any Settlement Class Member(s) in connection with the Settlement administration process through any means, including, but not limited to, if Class Counsel is contacted by any Settlement Class Member(s) after such Settlement Class Member(s) receive Class Counsel's contact information on the Class Notice or Claim Form, Class Counsel shall not use that information for any purpose other than assisting Settlement Class Member(s) with the Settlement process. Class Counsel shall not use information obtained through the Settlement administration process regarding the identity of and/or last-known address or email address of any Settlement Class Member(s) to solicit or notify any such Settlement Class Member(s) about any other currently-pending or future actions that such Settlement Class Member(s) may be able to join and/or bring. Nothing in this Settlement Agreement shall restrict Class Counsel's ability and right to represent any Settlement Class Member(s) in this Litigation or in any other currently-pending or future action in the event that such Settlement Class Member(s) independently approach(es) Class Counsel seeking representation in connection with their potential rights to assert claims against any entity or is approached by Class Counsel without using information obtained in connection with the Settlement administration process in this Litigation.

70. Within sixty (60) Days following the Preliminary Approval Date (the "Notice Date"), the Settlement Administrator shall provide Email Notice or Postcard Notice to all Settlement Class Members for whom it has a valid email address or U.S. Mail address. The notice by publication (i.e. targeted social media campaign) shall also commence within sixty (60) Days following the Notice Date. The Settlement Administrator shall mail a Claim Form to Settlement Class Members upon written or telephonic request. An electronic version of the Claim Form shall also be provided on the Settlement Website.

71. For any Settlement Class Members whose email addresses are determined to be invalid, the Settlement Administrator shall instead provide Postcard Notice. If any Postcard Notice is returned as undeliverable, the Settlement Administrator shall re-mail the Postcard Notice to the forwarding address, if any, provided on the face of the returned mail. For Postcard Notices returned with no forwarding address, the Settlement Administrator shall perform skip-tracing for any

returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing.

72. The mailed notice will consist of the Postcard Notice substantially in the form of **Exhibit C**, and the emailed notice will consist of the Email Notice substantially in the form of **Exhibit D**. The Settlement Administrator shall have discretion to format the Postcard Notice and Email Notice in a reasonable manner to minimize mailing and administrative costs.

73. A draft of the Long-Form Notice to be posted to the Settlement Website is attached as **Exhibit B**.

74. Before the mailing of the Postcard Notice and Email Notice is commenced, and before the Long-Form Notice is posted to the Settlement Website or otherwise provided to any Settlement Class Member, the Parties' Counsel shall first be provided with proof copies (including what the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and the Court's orders.

75. No later than sixty (60) Days following the Preliminary Approval Date, and prior to the mailing of the Postcard Notice and emailing of Email Notice to Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website. The Settlement Administrator shall cause the CAC, Postcard/Email Notice, Long-Form Notice, Claim Form, this Settlement Agreement, the Preliminary Approval Order, and other relevant settlement and Court documents to be available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by the Parties' Counsel, which approval shall not be unreasonably withheld. The website address and the fact that a more detailed Long-Form Notice and a Claim Form are available on the Settlement Website shall be included in the Postcard/Email Notice. The Settlement Administrator shall also create and

implement an interactive voice response system, with a live operator option and an email inbox, both of which Settlement Class Members may use to obtain information about the Settlement and claims process.

76. Settlement Class Members shall be able to submit their Claim Forms via the Settlement Website (in addition to submission by mail).

77. The Settlement Website shall be maintained from the Notice Date until sixty (60) Days after the Effective Date.

78. Claim Forms shall be returned or submitted to the Settlement Administrator electronically on the Settlement Website or via U.S. mail, electronically submitted or postmarked (as the case may be) by the Claims Deadline set by the Court, or be forever barred unless otherwise ordered by the Court.

79. The Long-Form Notice and Postcard/Email Notice approved by the Court may be adjusted by the Settlement Administrator in consultation with an agreement by the Parties, as may be reasonable and necessary and not inconsistent with the Court's approval.

80. Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court an appropriate affidavit or declaration concerning compliance with the Court-approved Notice Program.

## XI. Objections to the Settlement

81. Any Settlement Class Member who has not excluded himself or herself from the Settlement and who wishes to object to the Settlement Agreement must file with the Court a written objection to the Settlement ("Objection").

82. Each Objection must (i) include the case name and number of the Litigation (*Jenkins v. DaVita, Inc.*, Case No. 1:25-cv-01358 (D. Colo.)), (ii) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (iii) contain the

Settlement Class Member's personal and original signature; (iv) contain a statement explaining why the objector believes he or she is a Settlement Class Member; (v) state that the Settlement Class Member objects to the Settlement, in whole or in part; (vi) state whether the Objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; (vii) set forth a statement of the legal and factual basis for the Objection; (viii) include copies of any documents that the Settlement Class Member wishes to submit in support of his or her position; (ix) identify (by name, address, telephone number, and email address) any attorney representing the Settlement Class Member with respect to, or who provided assistance to the Settlement Class Member in drafting, his or her Objection; and (x) state whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through an attorney.

83. Objections must be filed with the Court no later than sixty (60) Days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Postcard/Email Notice and Long-Form Notice.

84. The Parties' Counsel may, but need not, respond to Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing.

85. An objecting Settlement Class Member has the right, but is not required, to attend the Final Approval Hearing. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing, his or her written Objection must also (i) identify any attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing and include the attorney(s) name, address, phone number, email address, state bar(s) to which counsel is admitted, as well as associated state bar numbers; (ii) identify any witnesses whom the objecting Settlement Class Member intends to call to testify; and (iii) include a

description of any documents or evidence that the objecting Settlement Class Member intends to offer.

86. Any Settlement Class Member who fails to timely file an Objection pursuant to the requirements set forth in this section, and otherwise as ordered by the Court, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation.

87. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Section XI of this Settlement Agreement.

**XII. Opt-Out Procedures**

88. Each person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent (a "Request for Exclusion") to the designated Post Office box established by the Settlement Administrator. The written notice must (i) identify the case name and number of this Litigation (*Jenkins v. DaVita, Inc.*, Case No. 1:25-cv-01358 (D. Colo.)); (ii) state the Settlement Class Member's full name, address, and telephone number; (iii) contain the Settlement Class Member's personal and original signature; (iv) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class, and; (v) request exclusion only for that one Settlement Class Member whose personal and original signature appears on the request. To be effective, written notice must be postmarked no later than sixty (60) Days after the Notice Date (the "Opt-Out Date").

89. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member, i.e., one request is required for every Settlement Class Member seeking

exclusion. Any Requests for Exclusion purporting to seek exclusion on behalf of more than one Settlement Class Member shall be deemed invalid by the Settlement Administrator.

90. All individuals who submit valid and timely Requests for Exclusion, as set forth in Paragraphs 88 and 89 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement, and shall not be entitled to object to or appeal any aspect of the Settlement. All individuals falling within the definition of the Settlement Class who do not validly and timely opt-out of the Settlement Class in the manner set forth in Paragraphs 88 and 89 above shall be bound by the terms of this Settlement Agreement and the Final Judgment entered thereon, and all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

91. Seven (7) Days after the Opt-Out Date, the Settlement Administrator shall provide the Parties with a complete and final list of all Opt-Outs who have timely and validly excluded themselves from the Settlement Class and, upon request, copies of all Requests for Exclusion that were submitted to the Settlement Administrator. Class Counsel may present to the Court the number of Opt-Outs (if any), as well as a list of Opt-Outs that includes only first name, last initial, city, and state of each Opt-Out, no later than fourteen (14) Days before the Final Approval Hearing.

**XIII. Attorneys' Fees, Costs, and Expenses, and Service Awards**

92. Class Counsel shall request that the Court approve an Attorneys' Fees, Costs, and Expenses Award not to exceed one-third (33.33%) of the amount of the Settlement Fund, plus reasonable Litigation Costs. Any Attorneys' Fees, Costs, and Expenses Award approved by the Court shall be paid by the Settlement Administrator from the Settlement Fund no later than twenty-one (21) Days after the later of the (i) Effective Date and (ii) the Court's ruling on Class Counsel's request for an Attorneys' Fees, Costs, and Expenses Award. For the avoidance of doubt, the Court-

approved amount of any Attorneys' Fees, Costs, and Expenses Award shall be paid solely from the Settlement Fund.

93. Class Counsel may also request that the Court approve a Supplemental Attorneys' Fees Award not to exceed one million five hundred thousand United States Dollars ($1,500,000.00) from the Supplemental Payment Amount secured by Class Counsel to provide compensation for the reimbursement of Documented Out-of-Pocket Losses to the Settlement Class. Any Supplemental Attorneys' Fees Award approved by the Court up to and not to exceed $1,500,000.00 shall be paid by the Settlement Administrator from the Supplemental Payment Amount no later than twenty-one (21) Days after the later of the (i) Effective Date and (ii) the Court's ruling on Class Counsel's request for the Supplemental Attorneys' Fees Award. For the avoidance of doubt, any Court-approved Supplemental Attorneys' Fees Award shall be paid solely from the Supplemental Payment Amount.

94. Other than paying for the Settlement Fund and the Supplemental Payment Amount as provided for in this Settlement Agreement, Defendant shall have no obligation or liability with respect to payment of any attorneys' fees, costs, or expenses incurred by Class Counsel in the Litigation.

95. Class Counsel shall request the Court to approve a service award of up to two thousand five hundred United States Dollars ($2,500) (the "Service Award") for each of the Class Representatives, which award is intended to recognize the Class Representatives for their efforts in the Litigation and commitment on behalf of the Settlement Class. For the avoidance of doubt, the Court-approved amount for any Service Award shall be paid from the Settlement Fund, and other than paying for the Settlement Fund as provided for in this Settlement Agreement, Defendant shall have no obligation or liability with respect to payment of any Service Awards (or any other

compensation to the Class Representatives). If approved by the Court, this Service Award will be paid by the Settlement Administrator from the Settlement Fund no later than twenty-one (21) Days after the later of the (i) Effective Date and (ii) the Court's ruling on Class Counsel's request for Service Awards.

96. The Parties did not discuss or agree upon payment of the Service Awards, the Attorneys' Fees, Costs, and Expenses Award, or the Supplemental Attorneys' Fees Award until after they agreed on all other material terms of the Settlement.

97. Class Counsel will file applications with the Court for the requested Service Awards, Attorneys' Fees, Costs, and Expenses Award, and Supplemental Attorneys' Fees Award no later than fourteen (14) Days prior to the Objection Deadline.

98. The Parties agree that the Court's approval or denial of any request for the Service Awards, the Attorneys' Fees, Costs, and Expenses Award, or the Supplemental Attorneys' Fees Award are not conditions to this Settlement Agreement and are to be considered by the Court separately from the final approval, reasonableness, and adequacy of the Settlement. If the Court declines to approve, in whole or in part, any request for the Service Awards, the Attorneys' Fees, Costs, and Expenses Award, or the Supplemental Attorneys' Fees Award, all remaining provisions in this Settlement Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of any of the Service Awards, the Attorneys' Fees, Costs, and Expenses Award, the Supplemental Attorneys' Fees Award, or the amounts thereof, shall operate to terminate or cancel (or be a basis for any Party to seek to terminate or cancel) this Settlement Agreement.

**XIV. Notices**

99. All notices to the Parties required by the Settlement Agreement shall be made in writing and communicated by mail or email to the following addresses:

All notices to Class Counsel or the Class Representatives shall be sent to:

Bart D. Cohen
Bailey Glasser, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
bcohen@baileyglasser.com

J. Gerard Stranch, IV
Stranch, Jennings & Garvey, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com

Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
GKlinger@milberg.com

All notices to Defendant's Counsel or Defendant shall be sent to:

David L. Balser
Robert D. Griest
King & Spalding LLP
1180 Peachtree Street N.E., Suite 1600
Atlanta, Georgia 30309
dbalser@kslaw.com
rgriest@kslaw.com

100. Other than attorney-client communications or communications otherwise protected from disclosure pursuant to law or rule, the Parties shall promptly provide to each other copies of comments, Objections, or other documents or filings received directly from a Settlement Class Member related to the Settlement.

## XV. Settlement Approval Process

101. After execution of this Settlement Agreement, Plaintiffs shall promptly move the Court to enter a Preliminary Approval Order in the form attached hereto as **Exhibit E**, or an order substantially similar to such form, that:

a. Preliminarily approves this Settlement Agreement;

b. Provisionally certifies the Settlement Class for settlement purposes only;

c. Finds the proposed Settlement is sufficiently fair, reasonable, adequate, and in the best interests of the Settlement Class;

d. Finds the Notice Program constitutes valid, due, and sufficient notice to the Settlement Class Members, and constitutes the best notice practicable under the circumstances, complying fully with the requirements of federal law, applicable state law, the Constitution of the United States, and any other applicable law and that no further notice to the Settlement Class is required beyond that provided through the Notice Program;

e. Appoints the Settlement Administrator;

f. Directs the Settlement Administrator to provide notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

g. Approves the Claim Form and directs the Settlement Administrator to administer the claims process in accordance with the provisions of this Settlement Agreement;

h. Approves the opt-out and Objection procedures as outlined in this Settlement Agreement;

i. Schedules an appropriate Opt-Out Date, Objection Deadline, and other Settlement-related dates and deadlines to be included in the Class Notice;

j. Schedules a Final Approval Hearing to consider the final approval, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court; and,

k. Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement.

102. Defendant will not oppose entry of the Preliminary Approval Order so long as it is substantially in the form attached as **Exhibit E** and is otherwise consistent with this Agreement.

## XVI. Final Approval Hearing

103. The Parties will recommend that the Final Approval Hearing shall be scheduled no earlier than one hundred (100) Days after the Notice Date.

104. The Parties may file a response to any Objections, and Class Counsel may file a motion for final approval of the Settlement no later than fourteen (14) Days prior to the Final Approval Hearing.

105. Plaintiffs shall ask the Court to enter a Final Approval Order and Final Judgment that includes the following provisions:

a. A finding that the Notice Program fully and accurately informed all Settlement Class Members entitled to notice of the material elements of the Settlement; constitutes the best notice practicable under the circumstances; constitutes valid, due, and sufficient notice; and complies fully with applicable law;

b. A finding that after proper notice to the Settlement Class, and after sufficient opportunity to object, no timely Objections to this Settlement Agreement have been made, or a finding that all timely Objections have been considered and denied;

c. Approval of the Settlement, as set forth in the Settlement Agreement, as fair, reasonable, adequate, and in the best interests of the Settlement Class, in all respects, finding that the Settlement is in good faith, and ordering the Parties and Settlement Administrator to perform the Settlement in accordance with the terms of this Settlement Agreement;

d. A finding that neither the Final Judgment, the Settlement, nor the Settlement Agreement shall constitute an admission of liability by any of the Parties, or any liability or wrongdoing whatsoever by any Party;

e. Subject to the reservation of jurisdiction for matters discussed in subparagraph (h) below, a dismissal with prejudice of the Litigation;

f. A finding that Plaintiffs shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Parties from the Released Claims;

g. A finding that all Settlement Class Members who did not validly and timely opt out of the Settlement shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Parties from the Released Claims; and

h. A reservation of exclusive and continuing jurisdiction over the Litigation and the Parties for the purposes of, among other things, (i) supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Final Approval Order, and the Final Judgment; and (ii) supervising the administration and distribution of the relief to the Settlement Class and resolving any disputes that may arise with regard to the foregoing. The Court's exclusive and continuing jurisdiction over the Litigation and Parties shall include, without limitation, the Court's power to enforce the bar against Settlement Class Members' prosecution of Released Claims against Released Parties pursuant to any applicable law.

106. Upon entry of the Final Approval Order, the Litigation shall be dismissed with prejudice, with the Parties to bear their own attorneys' fees, costs, and expenses not otherwise awarded in accordance with this Settlement Agreement.

## XVII. Termination of This Settlement Agreement

107. Each Party shall have the right to terminate this Settlement Agreement if:

a. The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that materially differs in substance to **Exhibit E**

hereto), and the Parties are unable to modify the Settlement in a manner sufficient to obtain and maintain preliminary approval;

b. The Court denies final approval of this Settlement Agreement;

c. The Final Approval Order and Final Judgment do not become Final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the Settlement on the terms set forth herein; or

d. The Effective Date cannot or does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement.

108. In addition to the grounds set forth above, Defendant shall have the right, but not the obligation, to terminate the Settlement Agreement if one percent (1%) or more of the Settlement Class Members submit timely and valid Requests for Exclusion by the Opt-Out Date.

109. The Parties agree to work in good faith to effectuate this Settlement Agreement.

110. If a Party elects to terminate this Settlement Agreement under this Section XVII, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or email within ten (10) Days of the occurrence of the condition permitting termination.

111. Nothing shall prevent Plaintiffs or Defendant from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement.

112. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement, the Preliminary Approval Order, the Final Approval Order and Final Judgment (if applicable), and all of their provisions shall be rendered null and void; (ii) all Parties shall be deemed to have reverted to their respective

status in the Litigation as of the date and time immediately preceding the execution of this Settlement Agreement; (iii) except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed; and (iv) no term or draft of this Settlement Agreement nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and Final Judgment), will have any effect or be admissible into evidence for any purpose in the Litigation or any other proceeding.

113. If the Court does not approve the Settlement or the Effective Date cannot or does not occur for any reason, Defendant shall retain all its rights and defenses in the Litigation. For example, Defendant shall have the right to object to the maintenance of the Litigation as a class action, to move to dismiss the CAC; to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Litigation may properly be maintained as a class action, or for any other purpose.

**XVIII. Release**

114. The Final Approval Order and Final Judgment shall provide that the Litigation is dismissed with prejudice as to the Plaintiffs and all Settlement Class Members, except those who timely and validly opt out of the Settlement.

115. On the Effective Date, Plaintiffs and each and every Settlement Class Member, except those who timely and validly opt out of the Settlement, shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder.

No other action, demand, suit, arbitration, or other claim or proceeding, regardless of forum, may be pursued against Released Parties with respect to the Released Claims.

116. On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, each of the Releasing Parties will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Parties from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, demands, charges, complaints, actions, suits, liabilities, rights, causes of action, disputes, contracts or agreements, extra-contractual claims, damages, punitive damages, exemplary damages, multiplied damages, expenses, costs, debts, penalties, losses, attorneys' fees, or obligations of every nature and description whatsoever, actual, potential, filed, known or Unknown, claimed or unclaimed, suspected or unsuspected, in law or in equity, fixed or contingent, accrued or unaccrued, direct or indirect, individual or representative, and matured or not matured, that could be brought by them or by another person or entity on their behalf, that arise out of, or are based upon or connected to, or relate in any way to the Ransomware Attack, the allegations in the Consolidated Amended Complaint and the Litigation, or any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding any alleged unauthorized disclosure of the Personal Information of Plaintiffs or the Settlement Class Members, including all claims that were brought or could have been brought in the Litigation (the "Release"). This Release shall be included as part of the Final Approval Order and Final Judgment so that all claims released thereby shall be barred by principles of *res judicata*, collateral estoppel, claim and issue preclusion, and settlement and release (the "Released Claims"). This Release shall constitute and may be raised as a complete defense to any proceeding arising from, relating to, or filed in connection with the Released Claims.

117. In the event any Settlement Class Member attempts to prosecute an action in contravention of a Final Approval Order and Final Judgment or the Settlement Agreement, the Parties' Counsel may forward the Settlement Agreement and the Final Approval Order and Final Judgment to such Settlement Class Member and advise such Settlement Class Member of the Release provided pursuant to the Settlement Agreement. If so requested by Defendant or Defendant's Counsel, Class Counsel shall provide this notice.

118. Subject to Court approval, upon entry of the Final Approval Order, Plaintiffs and all Settlement Class Members, except for those who timely and validly opt out of the Settlement, shall be bound by this Settlement Agreement and the Release herein and all Released Claims shall be dismissed with prejudice and released.

119. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims relating in any way to the subject matter of the Ransomware Attack, the Consolidated Amended Complaint, or the Litigation that could have been raised in the Litigation and that any of the Releasing Parties do not know to exist or suspect to exist, which, if known by him or her, might affect his or her agreement to release Defendant and all other Released Parties, or might affect his or her decision to agree to, to opt out of or not opt out of, or object or not to object to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs (on behalf of themselves and each Settlement Class Member) and the Releasing Parties expressly shall have, and by operation of the Final Approval Order and Final Judgment the Settlement Class Members shall have, released any and all Released Claims, including Unknown Claims. Plaintiffs (on behalf of themselves and each Settlement Class Member) and the Releasing Parties may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released

Claims, but Plaintiffs (on behalf of themselves and each Settlement Class Member) and the Releasing Parties expressly shall have, and by operation of the Final Approval Order and Judgment the Settlement Class Members shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims.

120. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Releasing Parties shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Plaintiffs and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of “Unknown Claims” in the definition of Released Claims was separately bargained for and was a material term of the Settlement Agreement.

121. On entry of the Final Approval Order and Final Judgment, the Plaintiffs, Settlement Class Members, and any other Releasing Parties shall be enjoined from prosecuting the Released Claims in any proceeding in any forum against any of the Released Parties or based on any actions taken by any Released Parties authorized or required by this Settlement Agreement or the Court or an appellate court as part of this Settlement.

122. The Parties agree that the Released Parties will suffer irreparable harm if any Settlement Class Member or other Releasing Party asserts any of the Released Claims against any

Released Parties, and that in that event, the Released Parties may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

123. Without in any way limiting the scope of the Release, the Release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiffs, Settlement Class Members, or the Releasing Parties, or any of them, in connection with or related in any manner to the Litigation (except for the Attorneys' Fees, Costs, and Expenses Award and Supplemental Attorneys' Fee Award to be paid to Class Counsel as specifically provided in Section XIII), the Ransomware Attack, Defendant's conduct alleged in the Consolidated Amended Complaint and other complaints filed or consolidated in the Litigation, the Settlement, the administration of such Settlement and/or the Released Claims as well as any and all claims for the Service Awards to Plaintiffs.

124. The Class Representatives covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any Released Claim, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action based on or relating to any Released Claim or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any Released Claim against any of the Released Parties.

125. The Parties agree that the Released Persons will suffer irreparable harm if any Settlement Class Member takes action inconsistent with Paragraph 124, and that in that event, the

Released Parties may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

126. Nothing in the Release shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

**XIX. Effective Date**

127. The "Effective Date" of this Settlement Agreement shall be the first Business Day after the date when all of the following conditions have occurred:

a. This Settlement Agreement has been fully executed by all Parties and their counsel;

b. Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement and approving the Notice Program and Claim Form, all as provided above;

c. The Court-approved Postcard/Email Notice has been mailed/emailed, and other notice required by the Notice Program, if any, has been effectuated and the Settlement Website has been duly created and maintained as ordered by the Court;

d. The Court has entered a Final Approval Order finally approving this Settlement Agreement, as provided above; and

e. The Final Approval Order and Final Judgment have become Final, as defined in Paragraph 21(x).

**XX. Representations and Warranties**

128. Each Party represents that: (i) such Party has the full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) such Party is voluntarily entering into the Agreement as a result of arm's length negotiations conducted by its counsel; (iii) such Party is relying solely upon its own judgment, belief, and knowledge, and the

advice and recommendations of its own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; (iv) such Party has been represented by, and has consulted with, the counsel of its choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and has been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein; (v) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party; (vi) except as provided herein, such Party has not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Agreement; (vii) each of the Parties assumes the risk of mistake as to facts or law; (viii) this Agreement constitutes a valid, binding, and enforceable agreement; and (ix) no further consent or approval of any Person is necessary for such Party to enter into this Agreement.

129. The Settlement Class Representatives represent and warrant that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenant that they will not assign or otherwise transfer any interest in any of the Released Claims against any of the Released Parties.

130. The Settlement Class Representatives represent and warrant that they have no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

## XXI. Miscellaneous Provisions

131. The recitals and exhibits to this Settlement Agreement are integral parts of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

132. This Settlement Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Settlement Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in the Consolidated Amended Complaint or Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendant or any admission by Defendant of any claim in this Litigation or allegation made in any other proceeding, including regulatory matters, directly or indirectly involving the Ransomware Attack, Defendant's cybersecurity practices, or allegations asserted in the Consolidated Amended Complaint and Litigation. This Settlement Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding between the Parties, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by Defendant that Plaintiffs' claims, or any similar claims, have merit or are suitable for class treatment.

133. The Parties agree and acknowledge that this Agreement carries no precedential value.

134. In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court. The Parties agree to execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement to give this Settlement Agreement full force and effect. The Parties further agree to reasonably cooperate in the defense of this Settlement Agreement against Objections made to the Settlement or a Final Approval Order and Final Judgment, including at the Final Approval

Hearing, or in any appeal from a Final Approval Order and Final Judgment, or in any collateral attack on this Settlement Agreement or a Final Approval Order and Final Judgment; provided, however, that Defendant shall have sole discretion in deciding whether Defendant will make any filing in respect of any Objection, appeal, or collateral attack regarding the Settlement.

135. No person shall have any claim against the Parties, the Parties' Counsel, the Settlement Administrator, or the Released Parties, or any of the foregoing's agents or representatives based on the administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any order of the Court or an appellate court.

136. This Settlement Agreement constitutes the entire Settlement Agreement between and among the Parties with respect to the Settlement of the Litigation. This Settlement Agreement supersedes all prior negotiations and agreements between the Parties regarding settlement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

137. There shall be no waiver of any term or condition in this Settlement Agreement absent an express writing to that effect by the waiving Party. No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

138. Defendant shall not be liable for any additional attorneys' fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Settlement Agreement. Class Counsel agree to hold Defendant harmless from any claim regarding the

division of any Attorneys' Fees, Costs, and Expenses Award or Supplemental Attorneys' Fees Award, and any claim that the term "Class Counsel" fails to include any counsel, individual, or firm who claims that they are entitled to a share of any Attorneys' Fees, Costs, and Expenses Award or Supplemental Attorneys' Fees Award in this Litigation.

139. In the event a third party, such as a bankruptcy trustee, former spouse, or other third party has or claims to have a claim against any payment made to a Settlement Class Member, it is the responsibility of the Settlement Class Member to transmit the funds to such third party. Unless otherwise ordered by the Court, the Parties will have no, and do not agree to any, responsibility for such transmittal.

140. This Settlement Agreement shall not be construed more strictly against one Party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's length negotiations resulting in this Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement.

141. All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

142. The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest. Amendments and modifications may be made without additional notice to the Settlement Class Members unless such notice is required by the Court.

143. This Settlement Agreement shall be construed under and governed by the laws of the State of Colorado without regard to its choice of law provisions.

144. The Parties, each Settlement Class Member, and the Settlement Administrator irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of the Settlement Agreement and its exhibits, but for no other purpose.

145. If Plaintiffs or Class Counsel intend to issue any press release or to make any posting on a website or social media concerning the Settlement, the language of such press release or posting must be approved in advance and in writing by Defendant, such approval not to be unreasonably withheld. This paragraph does not apply to routine posting (as in a list of settlements) of the fact and amount of the Settlement on websites of Class Counsel, for which approval need not be sought in advance.

146. Neither Plaintiffs nor Class Counsel shall make, publish, or state, or cause to be made, published, or stated, any defamatory or disparaging statement, writing or communication pertaining to Defendant or its current or former directors, officers, employees, attorneys, and/or affiliates, or any Related Entities.

147. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Agreement, including but not limited to those relating to all information exchanged for purposes of mediation or under the auspices of Federal Rule of Evidence 408 or any state law equivalent.

148. In the event that one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of the Settlement Agreement, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision(s) had never been a part of this Settlement Agreement as long as the

benefits of this Settlement Agreement to Defendant (including, but not limited to, the Release) or the Settlement Class Members are not materially altered, positively or negatively, as a result of the invalid, illegal, or unenforceable provision(s).

149. This Settlement Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties, Released Parties, and Settlement Class Members.

150. The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

151. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

152. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

153. Scanned signatures, electronic signatures, or signatures sent by email or facsimile shall be as effective as original signatures.

154. Except as expressly provided for herein, no government agency or official can claim any rights or credit under this Agreement or Settlement.

IN WITNESS WHEREOF, the Parties have hereby accepted and agreed to the Settlement Agreement.

[*Signatures Begin on the Following Page*]

**GODWIN ILOKA**

Godwin Iloka (Dec 22, 2025 15:48:11 CST)

______________________________

Date: Dec 22, 2025

**JULIAN JENKINS**

______________________________

Date: ______________________

**GREGORY LEAFE**

______________________________

Date: ______________________

**DAVITA, INC.**

______________________________

Signature

Printed:____________________

Title:______________________

Date:______________________

**BRENDA PEARSON**

______________________________

Date: ______________________

**LYDIA PERRYMAN**

______________________________

Date: ______________________

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

______________________________

Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Date: December 22, 2025

**Approved as to form and content by counsel for Defendant:**

______________________________

Robert D. Griest
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309

Date: ______________________

Docusign Envelope ID: ABEE154E-DC69-4016-8B4F-4B7F9E8D9A3D

**GODWIN ILOKA**

______________________________

Date: ______________________

**JULIAN JENKINS**

______________________________

Date: ______________________

**GREGORY LEAFE**

Gregory A. Leafe
Gregory A. Leafe (Dec 29, 2025 15:25:44 PST)

Date: 12/29/2025

**DAVITA, INC.**

Signed by:
Kathleen Waters
0E75CADECD58463...
Signature

Printed: Kathleen Waters

Title: Chief Legal and Public Policy Officer

Date: December 22, 2025

**BRENDA PEARSON**

______________________________

Date: ______________________

**LYDIA PERRYMAN**

______________________________

Date: ______________________

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

______________________________

Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Date: ______________________

**Approved as to form and content by counsel for Defendant:**

______________________________

Robert D. Griest
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309

Date: ______________________

**GODWIN ILOKA**

______________________________

Date: ______________________

**JULIAN JENKINS**

______________________________

Date: 12/22/2025

**GREGORY LEAFE**

______________________________

Date: ______________________

**DAVITA, INC.**

______________________________
Signature

Printed:____________________

Title:______________________

Date:______________________

**BRENDA PEARSON**

______________________________

Date: ______________________

**LYDIA PERRYMAN**

______________________________

Date: ______________________

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

______________________________
Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Date: ______________________

**Approved as to form and content by counsel for Defendant:**

______________________________
Robert D. Griest
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309

Date: ______________________

**GODWIN ILOKA**

______________________________

Date: ________________________

**JULIAN JENKINS**

______________________________

Date: ________________________

**GREGORY LEAFE**

______________________________

Date: ________________________

**DAVITA, INC.**

______________________________

Signature

Printed:________________________

Title:________________________

Date:________________________

**BRENDA PEARSON**

Brenda Pearson (Dec 22, 2025 17:11:09 EST)

Date: 12/22/2025

**LYDIA PERRYMAN**

______________________________

Date: ________________________

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

______________________________

Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Date: ________________________

**Approved as to form and content by counsel for Defendant:**

______________________________

Robert D. Griest
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309

Date: ________________________

**GODWIN ILOKA**

____________________________________

Date: ______________________________

**JULIAN JENKINS**

____________________________________

Date: 12/22/2025

**GREGORY LEAFE**

____________________________________

Date: ______________________________

**ANTHONY NATOLI**

____________________________________

Date: ______________________________

**DAVITA, INC.**

____________________________________

Signature

Printed: ______________________________

Title: ______________________________

Date: ______________________________

**BRENDA PEARSON**

____________________________________

Date: ______________________________

**LYDIA PERRYMAN**

____________________________________

Date: 12/29/2025

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

____________________________________

Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Date: ______________________________

**Approved as to form and content by counsel for Defendant:**

____________________________________

Robert D. Griest
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309

Date: ______________________________

**GODWIN ILOKA**

____________________________

Date: ____________________

**JULIAN JENKINS**

____________________________

Date: ____________________

**GREGORY LEAFE**

____________________________

Date: ____________________

**DAVITA, INC.**

____________________________

Signature

Printed:____________________

Title:____________________

Date:____________________

**BRENDA PEARSON**

____________________________

Date: ____________________

**LYDIA PERRYMAN**

____________________________

Date: ____________________

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

____________________________

Gary M. Klinger
Milberg PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Date: ____________________

**Approved as to form and content by counsel for Defendant:**

[signature]

Robert D. Griest
King & Spalding LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309

Date: 12/22/2025

# EXHIBIT A

MAIL ID
*0000PLACEHOLDER0000*

**Must be postmarked or submitted online NO LATER THAN Month Day, Year**

*DaVita Ransomware Settlement*
SETTLEMENT ADMINISTRATOR
P.O. BOX XXX
PORTLAND, OR 972XX-XXXX
www.xxxxxxxxx.com

# DaVita Ransomware Settlement Claim Form

***Jenkins v. DaVita Inc.,*** Case No. 1:25-cv-01358 (D. Colo.)

## GENERAL INFORMATION

If your Personal Information was potentially accessed without authorization in the Ransomware Attack involving DaVita, Inc. in April 2025, you may be entitled to benefits from a Settlement.

You may submit a Claim Form for Settlement benefits, outlined below, by visiting the Settlement Website at www.xxxxxxxxx.com. Claim Forms must be submitted or postmarked by Month Day, Year. If you would prefer to submit by mail, please use the return address at the top of this form.

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

**You may submit a claim for one or more of these benefits:**

**(1) Pro Rata Cash Payment:**

You may elect to receive a Pro Rata Cash Payment. The payments shall be calculated by dividing remaining funds in the $10,000,000 Settlement Fund, after payment of Notice and Claims Administration Costs, Attorneys' Fees, Costs, and Expenses, Service Awards, and the cost of claimed Credit Monitoring, by the number of eligible claims for Pro Rata Cash Payments. The Pro Rata Cash Payments will be adjusted upwards or downwards based upon the number of valid claims filed.

**(2) Credit Monitoring:**

In addition to selecting any other Settlement Benefits, you may claim three (3) years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services.

**(3) Reimbursement for Documented Out-of-Pocket Losses:**

All Settlement Class Members who timely submit a valid claim are eligible for reimbursement of up to a total of $2,500.00 per person for actual, documented, unreimbursed monetary losses fairly traceable to the Ransomware Attack incurred by a Settlement Class Member between April 11, 2025, and the Claims Deadline.

Documented Out-of-Pocket Losses for which reimbursement is available may include, without limitation, the unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft, fraud, falsified tax returns, real estate title fraud, financial fraud, government benefits fraud, or other misuse of the Settlement Class Member's Personal Information.

You must submit documentation supporting your Claim Form for Documented Out-of-Pocket Losses. Documentation supporting your losses can include receipts or other documentation that show the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

MAIL ID
*0000PLACEHOLDER0000*

Your claim for Pro Rata Cash or Documented Out-of-Pocket Losses may be subject to a *pro rata* (a legal term meaning equal share) decrease depending upon the total value of timely and valid Claim Forms.

.

* * *

*Please Note: The Settlement Administrator may contact you to request additional documents to process your Claim Form.*

For more information and complete instructions, visit **www.xxxxxxxxx.com**.

**Please note that Settlement benefits will be distributed after the Settlement is approved by the Court and becomes final. This make take some time – please be patient.**

MAIL ID
*0000PLACEHOLDER0000*

## Contact Information

**1. NAME (REQUIRED):**

First Name MI Last Name

**2. MAILING ADDRESS (REQUIRED):**

Street Address

Apt. No.

City State ZIP Code

**3. PHONE NUMBER:**

– –

**4. EMAIL ADDRESS:**

## Pro Rata Cash Payment:

☐ **I wish to receive a Pro Rata Cash Payment, currently estimated to be $50.**

Questions? Go to **www.xxxxxxxxx.com** or call **1-XXX-XXX-XXX**.

MAIL ID
*0000PLACEHOLDER0000*

## Documented Out-of-Pocket Losses

You may submit a Claim Form and provide documentation for reimbursement of up to $2,500 of Documented Out-of-Pocket Losses per Settlement Class Member.

It is important for you to send reasonable documents that show what happened and how much you lost or spent so that you can be reimbursed.

Documentation supporting your losses can include receipts or other documentation that show the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

To look up more details about how the reimbursement of Documented Out-of-pocket Losses works, visit **www.xxxxxxxxx.com** or call toll-free **1-XXX-XXX-XXX**. Please also review the Long Form Notice on the Settlement Website, which provides examples of what documents you need to attach and the types of expenses that can be claimed. *By filling out the boxes below, you are certifying under penalty of perjury that the money you spent doesn't relate to other ransomware attacks or data breaches; that the expenses detailed below are fairly traceable to the Ransomware Attack to the best of your knowledge, information, and belief; that the expenses detailed below were incurred between April 11, 2025 and the date of this Claim Form; that you have not been reimbursed from any other source for the expenses detailed below; and that you made reasonable efforts to avoid the losses detailed below or to seek reimbursement for the same, including, but not limited to, disputing unauthorized transactions and exhausting all existing credit monitoring insurance and identity theft insurance.*

| **Expense Type and Examples of Documents** | **Amount and Date** | **Description of Expense or Money Spent and Supporting Documents** (Identify what you are attaching, and why it's related to the Ransomware Attack) |
|---|---|---|
| Professional fees incurred to address identity theft or fraud, such as falsified tax returns, account fraud, and/or identity theft.<br>*Examples: Receipts, notices, or account statements reflecting payment for a credit freeze* | $ ☐☐☐☐☐ . ☐☐<br>Date: ☐☐ – ☐☐ – ☐☐☐☐<br>MM DD YYYY | ______<br>______<br>______ |
| Other losses or costs resulting from identity theft or fraud (provide detailed description) fairly traceable to the Ransomware Attack.<br>*Examples: Account statement with unauthorized charges circled; bank fees, and fees for credit reports, credit monitoring, or other identity theft insurance products purchased* | $ ☐☐☐☐☐ . ☐☐<br>Date: ☐☐ – ☐☐ – ☐☐☐☐<br>MM DD YYYY | ______<br>______<br>______ |

MAIL ID
*0000PLACEHOLDER0000*

| | | |
|---|---|---|
| Other expenses such as notary, fax, postage, copying, mileage, long-distance telephone charges, or professional fees related to the Ransomware Attack.<br>*Examples: Phone bills, receipts, detailed list of addresses you traveled to (e.g., police station, IRS office), reason why you traveled there (e.g., police report or letter from IRS re: falsified tax return) and number of miles you traveled* | $ ☐☐☐☐☐ . ☐☐<br>Date: ☐☐ – ☐☐ – ☐☐☐☐<br>MM DD YYYY | |

## Credit Monitoring and Identity Theft Restoration Services

You may choose to elect to receive three (3) years of free one-bureau credit monitoring.

☐ **By checking this box, I affirm I want to receive three (3) years of free one-bureau credit monitoring.**

## Payment Election

If your claim for a Pro Rata Cash Payment and/or Documented Out-of-Pocket Losses is eligible, you will receive payment by check unless you select one of the electronic payment options below and provide the email address or phone number associated with your account:

○ **Venmo**

Venmo Email or Phone:

○ **PayPal**

PayPal Email or Phone:

○ **Zelle**

Zelle Email or Phone:

○ **ACH/Direct Deposit**

ABA Routing Number

Account Number

## Signature

**By signing my name, I affirm under the penalty of perjury and laws of the United States that the information I have supplied in this Claim Form, and any copies of documents that I am sending**

MAIL ID
*0000PLACEHOLDER0000*

**to support my claim, are true and correct to the best of my knowledge.**

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

Signature

Date: __ __ – __ __ – __ __ __ __
MM DD YYYY

Print Name

Questions? Go to **www.xxxxxxxxx.com** or call **1-XXX-XXX-XXX**.

# EXHIBIT B

# If your Personal Information was potentially accessed without authorization in the Ransomware Attack involving DaVita, Inc. in April 2025, you may be entitled to benefits from a Settlement.

***A Court authorized this Notice. This is not a solicitation from a lawyer.***

- A settlement not to exceed $15,000,000 has been reached in a putative class action lawsuit against DaVita, Inc. ("DaVita" or "Defendant") regarding a criminal Ransomware Attack perpetrated against Defendant in April 2025 and resulting in the potential unauthorized access of Settlement Class Members' Personal Information. The Personal Information involved varied by individual, and may have included certain demographic information, such as names, addresses, dates of birth, Social Security numbers, health insurance-related information, and other identifiers internal to DaVita, as well as certain clinical information, such as health conditions, other treatment information, and certain dialysis lab test results. For some individuals, the information included tax identification numbers, and in limited cases images of checks written to DaVita.
- The Settlement Class includes: all U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack.
- If you are a member of the Settlement Class, you can submit a Claim Form for the following Settlement benefits:; (i) a Pro Rata Cash Payment currently estimated to be $50; (ii) 3 years of one-bureau credit monitoring and identity theft restoration services; and (iii) up to $2,500 in reimbursement for Documented Out-of-Pocket Losses You may submit a claim for any or all of the above-listed remedies.
- Your Pro Rata Cash Payment and reimbursement of Documented Out-of-Pocket Losses may be subject to a pro rata (a legal term meaning equal share) decrease depending upon the total value of timely and valid claims made under the Settlement.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights & Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | The only way to get Settlement benefits is to submit a timely and valid Claim Form. | Submitted or Postmarked by: **MONTH DD, 20YY** |
| **Exclude Yourself** | Get no Settlement benefits. Keep your right to file your own lawsuit against the Released Parties about the Released Claims that are released by the Settlement in this lawsuit. | Postmarked by: **MONTH DD, 20YY** |
| **Object to the Settlement** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Filed by: **MONTH DD, 20YY** |
| **Do Nothing** | Get no Settlement benefits. Give up your legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.
- The Court must decide whether to approve the Settlement, attorneys' fees, costs, and Service Awards. No Settlement benefits will be provided unless the Court approves the Settlement.

## BASIC INFORMATION

## 1. Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement of this putative class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what Settlement benefits are available, who is eligible for the Settlement benefits, and how to get them.

The Honorable Daniel D. Domenico of the United States District Court for the District of Colorado is overseeing this lawsuit, which is known as *Jenkins v. DaVita Inc.*, Case No. 1:25-cv-10358 ("lawsuit"). The individuals who filed this lawsuit are called the "Plaintiffs" and/or "Class Representatives" and the company sued, DaVita, Inc., is called the "Defendant."

## 2. What is this lawsuit about?

The Plaintiffs filed this lawsuit against the Defendant on behalf of themselves and all others similarly situated regarding a criminal Ransomware Attack perpetrated against Defendant in April 2025 and resulting in the potential unauthorized access to Settlement Class Members' Personal Information. The Personal Information involved varied by individual, and may have included certain demographic information, such as names, addresses, dates of birth, Social Security numbers, health insurance-related information, and other identifiers internal to DaVita, as well as certain clinical information, such as health conditions, other treatment information, and certain dialysis lab test results. For some individuals, the information included tax identification numbers, and in limited cases images of checks written to DaVita.

Defendant denies the legal claims and denies any wrongdoing or liability. The Court has not made any determination of any wrongdoing by Defendant, or that any law has been violated. Instead, the Plaintiffs and Defendant have agreed to a settlement to avoid the risk, cost, and time of continuing the lawsuit.

## 3. Why is there a Settlement?

The Plaintiffs and Defendant do not agree about the legal claims made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided in favor of the Plaintiffs or Defendant. Instead, the Plaintiffs and Defendant have agreed to settle the lawsuit. The lawyers for the Plaintiffs believe the Settlement is best for the Settlement Class because of the Settlement benefits available and the risks and uncertainty associated with continuing the lawsuit.

## 4. Why is this lawsuit a class action?

In a class action, one or more people (called class representatives) sue on behalf of all people who have similar legal claims. Together, all these people are called a class or class members. One court may resolve the issues for all class members, except for those class members who timely exclude themselves (opt-out) from the class.

# WHO IS INCLUDED IN THE SETTLEMENT?

## 5. How do I know if I am included in the Settlement?

The Settlement Class includes: all U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack.

## 6. Are there exceptions to being included in the Settlement?

Yes. Excluded from the Settlement Class are: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's affiliates, parents, subsidiaries, officers, directors, legal representatives, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the lawsuit and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly excludes themselves from the Settlement.

## 7. What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Settlement Class Member, you may go to www.XXXXXXXXXXX.com or call toll-free 1-XXX-XXX-XXXX.

# THE SETTLEMENT BENEFITS

## 8. What does this Settlement provide?

If you are a Settlement Class Member, you can submit a Claim Form for the following Settlement benefits:

**Pro Rata Cash Payment**. All Settlement Class Members may claim a pro rata cash payment in the estimated amount of $50.00. The payments shall be calculated by dividing remaining funds in the $10,000,000 Settlement Fund, after payment of Notice and Claims Administration Costs, Attorneys' Fees, Costs, and Expenses, Service Awards, and the cost of claimed Credit Monitoring , by the number of eligible claims for Pro Rata Cash Payments. The dollar amount of Pro Rata Cash Payments will be adjusted upwards or downwards based upon the number of valid claims filed.

**Credit Monitoring**. In addition to electing any of the other Settlement benefits, Settlement Class Members may claim three (3) years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services.

**Documented Out-of-Pocket Losses.** All Settlement Class Members may file a claim for reimbursement of Documented Out-of-Pocket Losses. Such compensation for Documented Out-of-Pocket Losses is limited to a maximum of $2,500 per individual Settlement Class Member. Documented Out-of-Pocket Losses may include, without limitation, actual, documented, unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft, fraud, falsified tax returns, real estate title fraud, financial fraud, government benefits fraud, or other misuse of the Settlement Class Member's Personal Information that is fairly traceable to the Ransomware Attack.

You will only be reimbursed for Documented Out-of-Pocket Losses if:

1. The loss is an actual, documented, and unreimbursed monetary loss;
2. The loss is fairly traceable to the Ransomware Attack;
3. The loss occurred between April 11, 2025 and the Claims Deadline;
4. You made reasonable efforts to avoid the loss or seek reimbursement for the loss, including, but not limited to, disputing unauthorized transactions and exhausting all existing credit monitoring insurance and identity theft insurance; and
5. You attest under penalty of perjury that you believe the loss is fairly traceable to the Ransomware Attack and that all the information provided on the Claim Form is true and accurate to the best of your knowledge, information, and belief.

To receive reimbursement for Documented Out-of-Pocket Losses, you must provide with your Claim Form:

1. Your name and current address;
2. Documentation supporting the unreimbursed cost(s), loss(es), or expenditure(s);
3. A brief description of the nature of the cost(s), loss(es), or expenditure(s);
4. An explanation of how each loss claimed is fairly traceable to the Ransomware Attack; and
5. An attestation under penalty of perjury (a legal term meaning a signed statement declaring the information is true and accurate) that you believe the loss is fairly traceable to the Ransomware Attack, that you have not been previously reimbursed for the claimed loss, and that all the information provided on the Claim Form is true and accurate to the best of your knowledge, information, and belief.

Examples of acceptable documentation may include receipts or other documentation not "self-prepared" by you. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to qualify for reimbursement for Documented Out-of-Pocket Losses.

To determine what losses are considered 'fairly traceable' to the Ransomware Attack, the Settlement Administrator will consider:

1. The timing of the loss, including whether the loss occurred on or after April 11, 2025, through the date of the Claim Form;
2. Whether the loss involved the possible misuse of the type of Personal Information potentially accessed in the Ransomware Attack;
3. The explanation you provide as to how the loss is fairly traceable to the Ransomware Attack;
4. The nature of the loss, including whether the loss could be reasonably incurred as a result of the Ransomware Attack;
5. Any other factor that the Settlement Administrator considers to be relevant; and
6. Any other factor that Class Counsel and Defendant's Counsel jointly agree to instruct the Settlement Administrator to consider.

The Settlement Administrator shall have the sole discretion and authority to determine whether claimed Documented Out-of-Pocket Losses are valid and fairly traceable to the Ransomware Attack.

Your reimbursement for Documented Out-of-Pocket Losses may be subject to a *pro rata* (a legal term meaning equal share) decrease if the total value of timely and valid Claim Forms exceeds the aggregate cap of $5,000,000. Reimbursement for Documented Out-of-Pocket Losses will be paid directly by the Defendant separate from the Settlement Fund.

## 9. What am I giving up to receive Settlement benefits or stay in the Settlement Class?

Unless you exclude yourself (opt-out), you will remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties about the Released Claims in this lawsuit. The specific rights you are giving up are called "Released Claims."

## 10. What are the Released Claims?

Section XVIII of the Settlement Agreement describes the Release, Released Claims, and Released Parties, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.XXXXXXXXXXX.com. For questions regarding the Release,

Released Claims, or Released Parties and what the language in the Settlement Agreement means, you can also contact Class Counsel listed below for free, or you can talk to your own lawyer at your own expense.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

### 11. How do I submit a Claim Form?

You must submit a timely and valid Claim Form to receive any Settlement benefits as described above. Your Claim Form must be submitted online at www.XXXXXXXX.com by **MONTH DD, 20YY**, or mailed to the Settlement Administrator at the address on the Claim Form, **postmarked** by **Month DD, 20YY**. Claim Forms are also available at www.XXXXXXXX.com or by calling 1-XXX-XXX-XXXX or by writing to:

*DaVita Ransomware Settlement*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

### 12. What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*DaVita Ransomware Settlement*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

### 13. When will I receive my Settlement benefits?

If you file a timely and valid Claim Form, the Settlement benefits will be provided after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXX.com for updates.

## EXCLUDE YOURSELF OR OPT-OUT OF THE SETTLEMENT

If you are a member of the Settlement Class and want to keep any right you may have to sue or continue to sue the Released Parties on your own about the legal claims in this lawsuit or the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

### 14. How do I opt-out of the Settlement?

To exclude yourself from the Settlement, you must mail a written request for exclusion, which includes the following:

1) Case Name and Number - *Jenkins v. DaVita Inc.*, Case No. 1:25-cv-10358 (D. Colo.);
2) Your full name, address, and telephone number;
3) Your personal and original physical signature; and

4) A statement that you want to be excluded from the Settlement Class, such as "I hereby request to be excluded from the Settlement Class in *Jenkins v. DaVita Inc.*"

The exclusion request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 20YY**:

*DaVita Ransomware Settlement*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**You cannot opt-out (exclude yourself) online or by telephone or email.**

You must submit an individual request seeking exclusion only for yourself. Any requests for exclusion purporting to seek exclusion on behalf of more than one Settlement Class Member (including any "mass" or "class" exclusion requests) will be deemed invalid by the Settlement Administrator.

### 15. If I opt-out can I still get anything from the Settlement?

No. If you opt-out, you will not be able to receive Settlement benefits, and you will not be bound by the Settlement or any judgments in this lawsuit. You can only get Settlement benefits if you stay in the Settlement and submit a timely and valid Claim Form.

### 16. If I do not opt-out, can I sue the Defendant for the same thing later?

No. Unless you opt-out, you give up any right to sue any of the Released Parties for the legal claims released by this Settlement, and you will be bound by all the terms of the Settlement and all proceedings, orders, and judgments in the lawsuit. You must opt-out of this lawsuit to start or continue your own lawsuit or be part of any other lawsuit against the Released Parties about the Released Claims in this Settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.

## OBJECTING TO THE SETTLEMENT

### 17. How do I tell the Court I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement, the requested Attorneys' Fees, Costs, and Expenses Award, and/or the requested Service Awards.

To object, you must file your timely written objection with the Court as provided below by **MONTH DD, 20YY**, stating you object to the Settlement in *Jenkins v. DaVita Inc.*, Case No. 1:25-cv-10358 (D. Colo.). If you request to exclude yourself from the Settlement, you cannot also file an objection.

Your objection must include all of the following information:

1) Case Name and Number - *Jenkins v. DaVita Inc.*, Case No. 1:25-cv-10358 (D. Colo.);
2) Your full name, current address, telephone number, and email address;
3) A statement explaining why you believe you are a Settlement Class Member;
4) A statement as to whether you object to the Settlement in whole or in part;
5) A statement as to whether the objection only applies to you as the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;
6) A statement of the legal and factual basis for your objection;
7) Copies of any documents that you wish to submit in support of your objection;

8) The identity of all lawyers (including name, address, telephone number, and email address) representing you with respect to, or who provided assistance to you in drafting, your objection;
9) A statement confirming whether you intend to appear at the Final Approval Hearing personally or through your lawyer; and
10) Your personal and original signature as the objector (a lawyer's signature is not sufficient).

To object, you must file your timely written objection with the Court by **MONTH DD, 20YY**, at the following address:

| COURT |
| --- |
| Clerk<br>U.S. District Court<br>Alfred A. Arraj Courthouse<br>901 19th Street<br>Denver, CO 80294 |

**Notice of Intention to Appear:**

If you are a Settlement Class Member and you object, you have the right, but are not required, to attend the Final Approval Hearing.

- If you object to the Settlement and intend to appear at the Final Approval Hearing, your objection must also include:

1. The identity of any lawyer(s) representing you as the objector who will appear at the Final Approval Hearing, including the lawyer's name, address, telephone number, email address, and state bar(s) to which the lawyer is admitted, as well as associated state bar numbers;
2. The identity of any witnesses whom you or your lawyer intends to call to testify at the Final Approval Hearing; and
3. A description of any documents or evidence that you or your lawyer intends to offer at the Final Approval Hearing.

### 18. What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself (or "opting-out") is telling the Court that you do not want to be part of the Settlement Class. If you opt-out, you cannot object because you are no longer part of the Settlement.

## THE LAWYERS REPRESENTING YOU

### 19. Do I have a lawyer in the lawsuit?

Yes. The Court has appointed Bart D. Cohen of Bailey Glasser, LLP, J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC, and Gary M. Klinger of Milberg PLLC as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost if you want someone other than Class Counsel to represent you in this lawsuit.

### 20. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to approve an Attorneys' Fees, Costs, and Expenses Award of up to one-third (approximately 33.33%) of the $10,000,000 Settlement Fund, plus reimbursement of reasonable litigation costs. Class Counsel may also ask the Court to approve a Supplemental Attorneys' Fees Award of up to $1,500,000 as compensation for the reimbursement of Documented Out-of-Pocket Losses that Class Counsel secured for the Settlement Class. The Supplemental Attorneys' Fees Award will be paid from the Supplemental Payment Amount separate from the Settlement Fund. The Supplemental Payment Amount is the sum of the timely and valid claims for reimbursement of Documented Out-of-Pocket Losses and the Supplemental Attorneys' Fees Award approved by the Court separate from the Settlement Fund, and is capped at $5,000,000.

Class Counsel will also ask the Court to approve Service Awards for the Class Representatives of up to $2,500 each for their efforts in litigating and settling this lawsuit. If awarded by the Court, any Service Awards will be paid from the Settlement Fund.

The Court may award less than the requested amount of Attorneys' Fees, Costs, and Expenses, the Supplemental Attorneys' Fees, and the Service Awards.

## THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement, the requested Attorneys' Fees, Costs, and Expenses, the requested Supplemental Attorneys' Fees, and the requested Service Awards. You may attend the Final Approval Hearing and you may ask to speak if you file an objection by the deadline, but you do not have to.

### 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY, at XX:XX a.m./p.m.** before the Honorable Daniel D. Domenico at the Alfred A. Arraj Courthouse, 901 19th Street, Denver, CO 80294. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, the requested Attorneys' Fees, Costs, and Expenses, the requested Supplemental Attorneys' Fees, and the requested Service Awards. If there are objections that were filed by the deadline, the Court will consider them at the Final Approval Hearing.

**Note:** The date and time of the Final Approval Hearing are subject to change without further notice to the Settlement Class. The Court may also decide to hold the hearing via video conference or by telephone. You should check the Settlement Website www.XXXXXXXXX.com to confirm the date and time of the Final Approval Hearing have not changed.

### 22. Do I have to attend the Final Approval Hearing?

No. Class Counsel will represent the Settlement Class at the Final Approval Hearing. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file your written objection by the deadline, the Court will consider it.

### 23. May I speak at the Final Approval Hearing?

Yes. You may ask to speak at the Final Approval Hearing. To do so, you must file a written Notice of Intent to Appear.

- As explained above, if you object to the Settlement and intend to appear at the Final Approval Hearing, your objection must also include:

1. The identity of any lawyer(s) representing you as the objector who will appear at the Final Approval Hearing, including the lawyer's name, address, telephone number, email address, and state bar(s) to which the lawyer is admitted, as well as associated state bar numbers;
2. The identity of any witnesses whom you or your lawyer intends to call to testify at the Final Approval Hearing; and
3. A description of any documents or evidence that you or your lawyer intends to offer at the Final Approval Hearing.

## GET MORE INFORMATION

### 24. How do I get more information about the Settlement?

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXXX.com. You may get additional information at www.XXXXXXXXXXX.com, by calling toll-free 1-XXX-XXX-XXXX, or by writing to:

*DaVita Ransomware Settlement*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR DAVITA REGARDING THIS NOTICE.**

# EXHIBIT C

[redacted]

*DaVita Ransomware Settlement*
Settlement Administrator
PO Box XXX
Portland, OR 972XX-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

Court-Approved Legal Notice

**If your Personal Information was potentially accessed without authorization in the Ransomware Attack involving DaVita, Inc. in April 2025, you may be entitled to benefits from a Settlement.**

*A Court has authorized this notice.*
*This is **not** a solicitation from a lawyer.*

**This notice is a summary.** Learn more about the Settlement at www.XXXXX.com, or by calling toll free 1-XXX-XXX-XXX.

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

[redacted]

A settlement not to exceed $15 million has been reached in a putative class action lawsuit against DaVita, Inc. ("DaVita" or "Defendant") regarding a criminal Ransomware Attack perpetrated against Defendant in April 2025 and resulting in the potential unauthorized access of Settlement Class Members' Personal Information.

**Who is Included?** Records show you are a member of the Settlement Class, defined as: all U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack.

**What does the Settlement Provide?** Settlement Class Members may claim any or all of the following benefits: (i) a Pro Rata Cash Payment currently estimated to be $50; (ii) 3 years of one-bureau credit monitoring and identity theft restoration services; and (iii) up to $2,500 in reimbursement for documented out-of-pocket losses.

You must file a Claim Form to receive payment or other benefits. For Pro Rata Cash Payments and Credit Monitoring, you may use the attached tear off claim sheet. For Documented Out-of-Pocket Losses, you must submit a Claim Form, which can be filed online or downloaded at www.[website].com to fill out and mail. You may also call 1-800-XXX-XXXX and ask that a Claim Form be mailed to you. The claim deadline is [DATE].

**Other Options**. If you do not want to be legally bound by the Settlement, you must submit a request for exclusion (or "opt-out"), **postmarked** by **Month XX, 20YY**, to the Settlement Administrator. If you do not opt-out, you will give up the right to sue and will release the Defendant and Released Parties for the legal claims and Released Claims in this lawsuit. If you do not opt out, you may object to the Settlement and/or the request Plaintiffs will make for attorneys' fees, costs, expenses and service awards by **Month XX, 20YY**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement benefits, and you will be bound by the Settlement, the releases, and any judgments and orders in the litigation.

The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement and Class Counsel's request for attorneys' fees, costs, expenses, and service awards. The Court will also address any objections that are timely filed. You or your lawyer may attend and speak at the hearing if you object and submit the required information, but you are not required to do so.

<<UniqueID>>

<<MailID>>

**CLAIM FORM FOR PRO RATA CASH PAYMENT AND CREDIT MONITORING**
**Claims must be postmarked or submitted online no later than Month Day, 20YY.**

Contact Information (Please fill in completely.)

Name:_______________________________________________Telephone Number: ___________________

Address:________________________________________________________________________________

City:______________________________________State:____________________Zip Code:_____________

Email Address: ___________________________________________________________________________

**Compensation for Documented Out-Of-Pocket Losses:** You can receive payment of up to $2,500.00 for actual, unreimbursed, Documented Out-of-Pocket Losses incurred as a result of the Ransomware Attack. Because you must submit supporting documentation to be compensated for these types of monetary losses, **you must submit a separate Claim Form online or by mail to claim Documented Out-of-Pocket Losses.**

In addition to compensation for Documented Out-of-Pocket Losses, you may select **any or all** of the following:

☐ **Pro Rata Cash Payment:** I wish to claim a Pro Rata Cash Payment, estimated to be $50. I understand this amount may increase or decrease depending on, among other things, the number of valid claims filed.

☐ **Credit Monitoring:** I wish to claim three (3) years of three-bureau credit monitoring.

You will receive email(s) at the address you fill in above in order to select your form of electronic payment or check, and to receive your credit monitoring enrollment code.

**By signing my name, I swear and affirm I am completing this Claim Form to the best of my personal knowledge.**

**Signature:** ____________________ **Dat** ____________________

BRM

Postage

*DaVita Ransomware Settlement*
Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

# EXHIBIT D

FROM: EMAIL ADDRESS
TO: EMAIL ADDRESS
RE: COURT ORDERED NOTICE – DAVITA RANSOMWARE SETTLEMENT

**UniqueID: <<UNIQUE ID>>**

United States District Court for the District of Colorado
*Jenkins v. DaVita, Inc.*

# If your Personal Information was potentially accessed without authorization in the Ransomware Attack involving DaVita, Inc. in April 2025, you may be entitled to benefits from a Settlement.

***A Court authorized this Notice. This is not a solicitation from a lawyer.***

**You can file your Claim Form here.**

A settlement not to exceed $15,000,000 has been reached in a putative class action lawsuit against DaVita, Inc. ("DaVita" or "Defendant") regarding a criminal Ransomware Attack perpetrated against Defendant in April 2025 and resulting in the potential unauthorized access to Settlement Class Members' Personal Information. The Personal Information involved varied by individual, and may have included names, addresses, dates of birth, Social Security numbers, health insurance-related information, and other identifiers internal to DaVita, as well as certain clinical information, such as health conditions, other treatment information, and certain dialysis lab test results. For some individuals, the information included tax identification numbers, and in limited cases images of checks written to DaVita.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included? Records show you are a member of the Settlement Class**, defined as: All U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack.

**What Does the Settlement Provide?** As a Settlement Class Member, you may claim the following Settlement benefits: (i) a Pro Rata Cash Payment currently estimated to be $50; (ii) 3 years of one-bureau credit monitoring and identity theft restoration services; and (iii) up to $2,500 in reimbursement for Documented Out-of-Pocket Losses. You may submit a claim for any or all of the above-listed benefits.

Your Pro Rata Cash Payment and reimbursement of Documented Out-of-Pocket Losses may be subject to a *pro rata* (a legal term meaning equal share) decrease depending upon the total value of timely and valid claims made under the Settlement.

You must file a Claim Form to receive payment or other benefit as part of the Settlement. The Claim Form can be filed online or downloaded at www.[website].com to fill out and mail. You may also call 1-800-XXX-XXXX and ask that a Claim Form be mailed to you. The deadline to mail your Claim Form or submit it online is [DATE].

More information is available in the Settlement Agreement or the Long Form Notice.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit a request for exclusion (or "opt-out"), **postmarked** by **Month XX, 20YY**, to the Settlement Administrator. If you do not opt-out, you will give up the right to sue and will release the Defendant and Released Parties about the legal claims and Released Claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or the requested Attorneys' Fees, Costs, and Expenses, the requested Supplemental Attorneys' Fees, and the requested Service Awards by **Month XX, 20YY**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement benefits, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement and Class Counsel's requests (i) for Attorneys' Fees, Costs, and Expenses of up to one-third of the $10,000,000 Settlement Fund plus reasonable litigation costs, (ii) Supplemental Attorneys' Fees up to $1,500,000 (to be paid as part of the Supplemental Payment Amount), and (iii) $2,500 Service Awards for each Class Representative. The Court will also address any objections that are timely filed. You or your lawyer may attend and speak at the hearing if you object and submit the required information (as detailed in the Settlement Agreement and Long Form Notice), but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement here or call toll free 1-XXX-XXX-XXXX.

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-1358-DDD-SBP

JULIAN JENKINS, et al., individually and
on behalf of all others similarly situated,

Plaintiff(s),

v.

DAVITA, INC.,

Defendant(s).

---

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT,
CERTIFYING SETTLEMENT CLASS, AND
DIRECTING NOTICE TO SETTLEMENT CLASS**

---

This matter came before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). Upon careful consideration of the Motion, and being otherwise advised in the premises, the Court finds and determines as follows:

Plaintiffs Godwin Iloka, Julian Jenkins, Gregory Leafe, Brenda Pearson, and Lydia Perryman brought class actions against Defendant DaVita Inc. ("DaVita" or "Defendant"), in the spring of 2025 in connection with Defendant's alleged failure to properly secure and safeguard their and putative class members' Personal Information, resulting in a ransomware attack in April 2025 and the alleged publication of their personal information on the dark web. In the operative consolidated complaint, Plaintiffs allege common law and state statutory claims on behalf of Plaintiffs and a putative nationwide class and several state subclasses.

The Parties, through their counsel and with the assistance of an experienced mediator, Bruce Friedman, have entered into a Settlement and Release Agreement (the "Settlement

Agreement" or "Settlement") following good faith, arm's-length negotiations.[1] The Parties have agreed to settle this Litigation, pursuant to the terms of the Settlement Agreement, and subject to the approval and determination of the Court as to the fairness, reasonableness, and adequacy of the settlement which, if approved, will result in dismissal of this Litigation with prejudice.

Having reviewed the Settlement Agreement, and all prior proceedings herein, and for good cause shown, it is hereby ordered that Plaintiffs' Motion for Preliminary Approval is granted as set forth herein.

## I. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

For settlement purposes only and pursuant to Federal Rule of Civil Procedure 23(a) and (b), the Court provisionally certifies a class in this matter defined as follows:

> All U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack.

Excluded from the Class are: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's affiliates, parents, subsidiaries, officers, directors, legal representatives, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly excludes themselves from the Settlement.

The Court provisionally finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Settlement Class Representatives are typical of and arise from the same operative facts and seek similar relief as the

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as defined in the Settlement and Release Agreement, which was filed with Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

claims of the Settlement Class Members; (d) the Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives have no interest antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) for purposes of settlement, questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this case.

Certification of the Settlement Class shall be solely for settlement purposes and without prejudice to the Parties in the event the Settlement is not finally approved by this Court or otherwise does not take effect, and the Parties preserve all rights and defenses, including with regard to certification of any litigation class, in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

## II. SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

Godwin Iloka, Julian Jenkins, Gregory Leafe, Brenda Pearson, and Lydia Perryman are hereby provisionally designated and appointed as the Settlement Class Representatives. The Court provisionally finds that the Settlement Class Representatives are similarly situated to absent Settlement Class Members, and are therefore typical of the Settlement Class, and that they will be adequate Settlement Class Representatives.

The Court finds that Bart D. Cohen of Bailey Glasser, LLP; J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC; and Gary Klinger of Milberg PLLC are experienced and adequate counsel and are provisionally designated as Settlement Class Counsel.

## III. PRELIMINARY SETTLEMENT APPROVAL

Upon preliminary review, the Court finds that the proposed Settlement was negotiated at arm's length by informed and experienced counsel, who were overseen by a skilled mediator. Further, the Court preliminarily finds that the proposed Settlement is fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class. For these reasons, the Court concludes and determines that it will likely be able to grant final approval of the Settlement and certify the Settlement Class under Rule 23. Accordingly, the proposed Settlement is hereby preliminarily approved.

## IV. JURISDICTION

The Court finds that it has subject matter jurisdiction and personal jurisdiction over the Parties. Additionally, venue is proper in this Court.

## V. FINAL APPROVAL HEARING

A Final Approval Hearing shall be held on __________ ___, 2026 at ___:___ a.m./p.m. in Courtroom A1002 of the United States District Court for the District of Colorado, located at Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado 80294 to determine, among other things, whether: (i) this matter should be finally certified as a class action for settlement purposes pursuant to Rule 23; (ii) the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Rule 23; (iii) the Litigation should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (iv) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (v) the application of Class Counsel for an award of attorneys' fees, costs and expenses (the "Fee Request") should be approved; and (vi) the application of the Settlement Class Representatives for Service Awards (the "Service Award Request") should be approved.

Plaintiffs' motion for final approval of the Settlement and responses, if any, to any objections shall be filed with the Court by 14 days prior to Final Approval Hearing. Plaintiffs' Service Awards Request and Class Counsel's Fee Request shall be filed with the Court by 14 days prior to the deadline to opt-out of or object to the Settlement.

## VI. ADMINISTRATION

The Court appoints Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator, with responsibility for class notice and claims administration. The Settlement Fund shall be used to pay all costs and expenses associated with providing notice to Settlement Class Members, processing claims submitted by Settlement Class Members, and carrying out all other responsibilities as set forth in the Settlement Agreement.

## VII. NOTICE TO THE CLASS

The proposed Notice Program set forth in the Settlement Agreement, including the Postcard Notice, Email Notice, and Long-Form Notice, satisfies the requirements of Rule 23(e)(1), provides the best notice practicable under the circumstances, and is hereby approved. Non-material modifications to these notices, as well as the Claim Form, may be made without further order of the Court. The Settlement Administrator is directed to carry out the Notice Program in conformance with the Settlement Agreement.

By sixty (60) days after entry of this Order (the "Notice Date"), the Settlement Administrator shall implement the Notice Program, which shall be completed in the manner set forth in the Settlement Agreement.

## VIII. FINDINGS CONCERNING NOTICE

The Court finds that the form, content, and method of giving notice to the Settlement Class as described in Section VII of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably

calculated to apprise Settlement Class Members of the pendency of the Litigation and the terms of the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and any other persons entitled to receive notice; and (d) meet all applicable requirements of law, including Rule 23(e), and the Due Process Clauses of the United States Constitution.

The Court further finds that the notices are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members.

## IX. EXCLUSION FROM CLASS

Any Settlement Class Member who wishes to be excluded from the Settlement Class shall individually sign and timely submit a written request (a "Request for Exclusion") to the designated Post Office box established by the Settlement Administrator. The written request must (i) identify the case name and number of this Litigation (*Jenkins v. DaVita Inc.*, Case No. 1:25-cv-10358 (D. Colo.)); (ii) state the Settlement Class Member's full name, address, and telephone number; (iii) contain the Settlement Class Member's personal and original signature; (iv) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class, and; (v) request exclusion only for that one Settlement Class Member whose personal and original signature appears on the request. To be effective, written notice must be postmarked no later than sixty (60) Days after the Notice Date (the "Opt-Out Date").

The Settlement Administrator shall provide the Parties with copies of all requests for exclusion that it receives, in addition to a final list of all Settlement Class Members who have timely and validly excluded themselves from the Settlement Class. Any Settlement Class Member who does not timely and validly exclude herself or himself from the Settlement shall be bound by the terms of the Settlement. If a Final Approval Order and Final Judgment is entered in the

Litigation, any Settlement Class Member who has not submitted a timely and valid written request for exclusion from the Settlement Class shall be bound by all proceedings, orders, and judgments in the Litigation, including but not limited to the Release and the dismissal with prejudice set forth in the Final Judgment (including any Settlement Class Members who have previously initiated or who subsequently initiate any litigation or proceeding against any or all of the Released Parties relating to the claims and transactions released in the Settlement Agreement). All Settlement Class Members who submit valid and timely requests for exclusion from the Settlement Class shall not be entitled to receive any benefits of the Settlement and shall not have the right to object to the Settlement.

## X. OBJECTIONS

A Settlement Class Member who does not exclude himself or herself and who complies with the requirements of the following paragraphs may object to the Settlement, the Service Award Request, or the Fee Request, and must do so no later than 60 Days after the Notice Date (the "Objection Deadline").

Each Objection must (i) include the case name and number of the Litigation (*Jenkins v. DaVita Inc.*, Case No. 1:25-cv-10358 (D. Colo.)), (ii) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (iii) contain the Settlement Class Member's personal and original signature; (iv) contain a statement explaining why the objector believes he or she is a Settlement Class Member; (v) state that the Settlement Class Member objects to the Settlement, in whole or in part; (vi) state whether the Objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; (vii) set forth a statement of the legal and factual basis for the Objection; (viii) include copies of any documents that the Settlement Class Member wishes to submit in support of his or her position; (ix) identify (by name, address, telephone number, and email address) any attorney representing the Settlement

Class Member with respect to, or who provided assistance to the Settlement Class Member in drafting, his or her Objection; and (x) state whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through an attorney.

Any Settlement Class Member, including a Settlement Class Member who has not opted-out and files a written Objection, as described above, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to or comment on the fairness, reasonableness, or adequacy of the Settlement, the Service Award Request, or the Fee Request.

Any Settlement Class Member who files an Objection and intends to appear at the Final Approval Hearing must also include in his or her written Objection: (i) the identity of any lawyer(s) representing the Settlement Class Member who will appear at the Final Approval Hearing, including the lawyer's name, address, telephone number, email address, and state bar(s) to which the lawyer is admitted, as well as associated state bar numbers; (ii) the identity of any witnesses the Settlement Class Member (or his or her lawyer) intends to call to testify at the Final Approval Hearing; and (iii) a description of any documents or evidence that the Settlement Class Member (or his or her lawyer) intends to offer at the Final Approval Hearing.

Any Settlement Class Member who fails to substantially comply with the provisions of this Order and the Settlement Agreement with respect to Objections shall be deemed to have waived any objection and shall not be permitted to object at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation.

## XI. CLAIMS PROCESS AND DISTRIBUTION OF BENEFITS

The Settlement Agreement provides for a process for distributing settlement benefits to Settlement Class Members who submit a timely and valid Claim Form. The Court preliminarily approves the settlement benefits and plan for distribution of same as described in the Settlement Agreement, and directs that the Settlement Administrator effectuate the distribution of settlement consideration according to the terms of the Settlement Agreement, should the Settlement be finally approved.

The Court further approves of the form and content of the Claim Form attached as an exhibit to the Settlement Agreement. Any Settlement Class Member wishing to obtain benefits under the Settlement must submit their Claim Form online at the Settlement Website or mail their Claim Form to the Settlement Administrator, as set forth in detail in the Claim Form. Claims must be submitted online or postmarked no later than 90 Days after the Notice Date (the "Claims Deadline").

If Final Judgment is entered, all Settlement Class Members who qualify for a benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Settlement Agreement, the notices, and the Claim Form will be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Settlement Agreement, the Release included in the Settlement Agreement, and the Final Judgment.

## XII. TERMINATION OF THE SETTLEMENT

This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement. In such event, the Settlement and Settlement

Agreement shall become null and void and be of no further force and effect; neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever; and the Settlement Administrator shall return to DaVita any amounts DaVita has already deposited in the Settlement Account that are not required to pay for reasonable Notice and Claims Administration Costs already incurred prior to termination. In the event of such a reversion, no class shall be deemed to have been certified, and the proposed or actual certification of a Settlement Class shall not be urged or considered as a factor in any subsequent litigation over the certification of a litigation class or classes.

## XIII. USE OF ORDER

This Order shall be of no continuing force or effect if Final Judgment is not entered or there is no Effective Date (as defined in the Settlement Agreement). In no event shall this Order be construed, regarded, or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability, or the certifiability of any class. Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Settlement Class Representatives or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any Party of any defense or claims he, she, or it may have in this Litigation or in any other lawsuit.

## XIV. STAY AND INJUNCTION OF PROCEEDINGS

Except as necessary to effectuate this Order, all proceedings and deadlines in this Litigation are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Final Judgment, or until further order of this Court.

Pending final determination of whether the Settlement should be finally approved, Plaintiffs and all Settlement Class Members (and any persons purporting to act on their behalf) are barred and enjoined from filing, commencing, prosecuting, maintaining, or enforcing any action

against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum. This bar and injunction is necessary to protect and effectuate the Settlement and this Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction.

## XV. CONTINUANCE OF HEARING

The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement Website maintained by the Settlement Administrator.

## XVI. SUMMARY OF DEADLINES

The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

1. **Notice Date**: 60 days after entry of this Order
2. **Fee Request and Service Award Request**: 14 days prior to Opt-Out Date and Objection Deadline
3. **Opt-Out Date and Objection Deadline**: 60 days after Notice Date
4. **Claims Deadline**: 90 days after Notice Date
5. **Motion for Final Approval**: 14 days prior to Final Approval Hearing
6. **Final Approval Hearing**: (at least 100 days after Notice Date): ________________ _____, 2026 at ___:___ a.m./p.m.

The dates set in this Order should be included as appropriate in the Email Notice, Long-Form Notice, and Postcard Notice, as well as on the Settlement Website. The Parties shall have the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of the Settlement Agreement.

DATED: ____________________

BY THE COURT:

______________________________
Daniel D. Domenico
United States District Judge