**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 1:25-cv-01358-RMR-SBP

JULIAN JENKINS, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DAVITA, INC.,

---

**ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

---

This matter is before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 38 ("Motion"). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This case arises from a ransomware attack experienced by DaVita Inc. ("DaVita") in April 2025 (the "Ransomware Attack") that was perpetrated by a ransomware group known as "Interlock." ECF No. 26 ¶¶ 1, 5. The Ransomware Attack, and the accompanying data breach, involved the unauthorized access of personally identifiable information ("PII") and protected health information ("PHI) (collectively, "Personal Information") belonging to approximately 1.2 million individuals, including Plaintiffs, who are current and former patients of DaVita—"a leading provider of kidney care services in the United States[.]" *Id.* ¶¶ 1, 3, 214.

Following the consolidation of ten other cases related to the Ransomware Attack under the case caption *Jenkins et. al. v. DaVita, Inc.*, Case No. 25-cv-01358-RMR-SBP, *see* ECF Nos. 21 and 31, the number of members of the settlement class climbed dramatically; the proposed settlement provides for relief for a putative class of 2.3 million members. ECF No. 38 at 6. Plaintiffs allege that the Ransomware attack caused them and the other members of the settlement class to sustain numerous injuries, including being subjected to a current, imminent, and ongoing risk of fraud and identity theft as a result of Interlock publishing their Personal Information on the dark web. ECF No. 26 ¶¶ 5, 16-18, 78, 124, 128, 248, 271. In this action, Plaintiffs bring various common law claims and claims arising under state statutes. *Id.* ¶¶ 225-335. For its part, DaVita denies any wrongdoing or liability.

Soon after Plaintiffs filed their Consolidated Amended Class Action Complaint and Demand for Jury Trial ("Consolidated Complaint"), the parties agreed to a mediation and reached a settlement. ECF No. 38-1 ¶ 9. In the Motion, Plaintiffs now ask the Court to certify the settlement class and preliminarily approve the proposed settlement. *See generally* ECF No. 38; ECF No. 38-1 (Settlement Agreement).

**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the Settlement Agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the

settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted). Although the standards for preliminary approval of a class action settlement are not as stringent as they are for final approval, *id.*, the standards used for final approval inform the Court's preliminary inquiry. *See* Fed. R. Civ. P. 23(e)(1)(B) (preliminary approval appropriate when parties show the court will "likely" be able to grant final approval). Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of*

*Cnty. Comm'rs of the Cnty. of El Paso* ("*Shook I*"), 386 F.3d 963, 967 (10th Cir. 2004). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350-51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of class actions identified in Rule 23(b). In the typical case where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook I*, 386 F.3d at 968).

Here, the Plaintiffs move for certification for the purposes of settlement and DaVita does not oppose the motion. ECF No. 38 at 1-2. Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011). A class action may be sustained if these requirements are

satisfied and the class meets the requirements of one of the categories of Rule 23(b). Fed. R. Civ. P. 23(b).

Plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3). ECF No. 38 at 12-18. Under that provision, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

To certify a settlement class, the court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, all of the other Rule 23 requirements apply and demand heightened attention in the settlement context because the Court generally lacks an opportunity to adjust the class as the case unfolds. *Id.* If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the Court must separately evaluate whether the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e). Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d

229, 238 (2d Cir. 2012).

If Plaintiffs meet the requirements for preliminary approval, the Court will direct notice to all class members who would be bound by the proposal and hold a fairness hearing to determine if

> it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Though the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the Court's preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[ ] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## ANALYSIS

### I. Rule 23 Certification

Plaintiffs here seek certification of a Settlement Class consisting of "all U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack." ECF No. 38-1 ¶ 21(ddd).

"[A] district court faced with a settlement only class need not inquire whether the class would present intractable problems with trial management," but the court must determine whether the other requirements for Rule 23 class certification are satisfied. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016). Those requirements are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, to certify a class it must be shown that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### A. Rule 23(a)

##### 1. Numerosity

"A certifiable class must be so numerous that joinder is impracticable." *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ-MEH, 2014 WL 1133299, at *3 (D.

Colo. Mar. 21, 2014). "Numerosity also requires that the members of the class be ascertainable with the use of objective criteria." *Id.* The proposed Settlement Class here includes some 2,394,674 individuals who had Personal Information potentially compromised in the Ransomware Attack. ECF No. 38 at 14. Therefore, the Court finds that the proposed class satisfies the numerosity requirement of Rule 23.

**2. Commonality**

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194-95 (10th Cir. 2010). Commonality exists when the class members have "'suffered the same injury' such that the claims of the class are based on a common contention," and the determination of that contention will resolve the central issue. *Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2020 WL 7319081, at *4 (D. Colo. Dec. 11, 2020) (quoting *Dukes*, 564 U.S. at 350).

Here, common issues exist between Plaintiffs and Settlement Class Members, including (but not limited to): (1) whether DaVita failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Ransomware Attack; (2) whether DaVita's data security practices prior to and during the Ransomware Attack complied with applicable data security laws and regulations; and (3) whether DaVita's conduct rose to the level of negligence. These common questions are central to the litigation, will generate common answers, and can be addressed on a class-wide basis.

### 3. Typicality

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Hunter*, 2020 WL 13444205, at *3. "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence." *Martinez*, 2020 WL 7319081, at *5. Here, Plaintiffs' and the Settlement Class Members' claims all stem from the same Ransomware Attack and the data security protocols that DaVita had (or did not have) in place to protect Plaintiffs' and the Settlement Class Members' data. Thus, the typicality requirement is satisfied.

### 4. Adequacy of Representation

Finally, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation requirement "concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez v. Spring Auto. Grp.*, LLC, 268 F.R.D. 391, 396-97 (D. Colo. 2010) (internal citation omitted). Resolution of two questions determines legal adequacy: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be

resolved in favor of upholding the class, subject to later possible reconsideration." *Hunter*, 2020 WL 13444205, at *4.

With regard to the first adequacy factor, the Court finds that the interests of the class are fairly and adequately protected by the Plaintiffs and their counsel. Plaintiffs' interests are aligned with those of the Settlement Class because they seek relief for injuries arising out of the same Ransomware Attack. Under the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for the same $2,500 documented out-of-pocket loss reimbursements, the same estimated $50 reduced or increased pro rata based on the claims raised and availability of funds, and the same credit-monitoring services. ECF No. 38-1 ¶ 29. Further, there is nothing in the record to show any conflict of interest between the representative plaintiffs or counsel and the rest of the class. Moreover, the Settlement Agreement does not raise any obvious concerns regarding interclass conflicts. Class members will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the parties represent that the Settlement Agreement was reached following vigorous negotiations by experienced counsel after arm's length negotiations. ECF No. 38 at 19. Proposed Class Counsel represent that they have decades of combined experience as vigorous class action litigators and, in particular, experience in negotiating early-stage settlements that guarantee immediate relief to Settlement Class members. *Id.* at 16. The Court has thoroughly reviewed the detailed description of the experience of each Proposed Class

Counsel. ECF No. 38-2 ¶¶ 2-16. At this preliminary stage, the Court finds that the representative Plaintiffs and their counsel have satisfied Rule 23(a)(4)'s requirements.

Accordingly, the Court finds that all four elements of Rule 23(a) have been met.

**B. Rule 23(b)(3)**

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615. Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation on district courts to ensure that issues common to the class predominate over those affecting only individual class members. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624. Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity

of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement." *Amchem*, 521 U.S. at 623.

Here, the key predominating questions are whether DaVita had a duty to exercise reasonable care in safeguarding, securing and protecting the Personal Information of Plaintiffs and the Settlement Class; whether DaVita breached that duty; and whether DaVita's conduct with regard to data security was negligent. ECF No. 38 at 18. Because the common questions of law and fact depend upon the conduct of DaVita, these questions predominate as they are unaffected by the particularized conduct of individual class members. *See e.g.*, *Beasley v. TTEC Servs. Corp.*, No. 22-cv-00097-PAB-STV, 2023 WL 3323311, at *7 (D. Colo. May 9, 2023); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018).

Further, the resolution of over 2.3 million claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of

individually litigating tens of thousands of individual data breach cases arising out of the same Ransomware Attack. Thus, given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision-making for similarly situated persons. Fed. R. Civ. P. 23(b)(3).

For these reasons, the Court finds that the class meets all the requirements of Rule 23 and therefore certifies the class for settlement purposes.

## II. Preliminary Approval of the Settlement Agreement

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery

outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188. If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

First, the Court finds that the settlement was fairly and honestly negotiated. The negotiations in this matter occurred at arm's length, with the assistance of an experienced mediator. ECF No. 38-2 ¶ 32. Soon after the Consolidated Complaint was filed, the parties agreed to mediate to attempt to achieve an early resolution. ECF No. 38 at 5. The negotiations between seasoned counsel—who are frequent adversaries in data privacy cases across the United States, ECF No. 38-2 ¶ 32—protected against collusion and promoted the fairness considerations animating Rule 23(e).

Second, the Court finds the ultimate outcome of the litigation is uncertain. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."). While Plaintiffs strongly believe in the merits of their case, they also concede that DaVita asserts potentially case-dispositive defenses. ECF No. 38 at 21. As Plaintiffs

acknowledge, should litigation continue, they would immediately face a motion to dismiss in order for the case to proceed. *See id.* Thus, even surviving the pleading stage is not guaranteed.

Third, the value of immediate recovery outweighs the mere possibility of future relief. The Settlement guarantees Class Members real relief and value for harms as well as protections from potential future fall-out from the Ransomware Attack. The $15,000,000 in relief to the Settlement Class includes a $10,000,000 non-reversionary Settlement Fund to which Settlement Class Members can submit a claim for relief. ECF No. 38-1 ¶ 24. Even if every single class member were to file a claim, the non-reversionary Settlement Fund alone provides for a per-class-member recovery of approximately $4.17. ECF No. 38 at 21-22. The court finds this compares favorably to terms approved by courts in other, similar data breach cases. *See, e.g., Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 20-cv-3424, 2022 WL 16821685, (N.D. Tex. Oct. 14, 2022) (data breach class action involving more than three million people that settled for $2.3 million); *In re Herff Jones Data Breach Litig.*, No. 21-cv-1329, 2022 WL 474696 (S.D. Ind. Jan. 12, 2022) (data breach class action involving more than one million people that settled for $4.35 million (or approximately $4.35 per person)).

Finally, it is evident that the parties believe that the settlement agreement is fair and reasonable. In negotiating the Settlement, Plaintiffs' Counsel relied on published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in

data breach litigation, and reported settlements in other data breach class actions. ECF No. 38 at 21. The monetary benefits offered to Settlement Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data breach and compare favorably to what Class Members could recover if successful at trial. *See id.*

Moreover, the proposed Settlement includes a non-reversionary common fund that does not provide any preferential treatment to the named Plaintiffs or any segments of the Settlement Class. *Id.* at 22; *see also* Fed. R. Civ. P. 23(e)(2)(D). The Settlement Class Members can recover damages for any injuries caused by the Ransomware Attack. ECF No. 38 at 23. In satisfaction of Rule 23(e)(2)(D), the reimbursements for out-of-pocket expenses allow Settlement Class Members to obtain relief based on the specific types of damages they incurred and treat every claimant in those categories equally relative to each other. *Id.* Plaintiffs intend to apply for service awards for the Class Representatives. *Id.* These awards “are fairly typical in class action cases” and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ’g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Class Representatives were not promised a service award, nor did they condition their representation on the expectation of a service award. ECF No. 38-2 ¶ 44.

For these reasons, the Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed Settlement Agreement.

## III. Notice to the Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for a class proposed for settlement purposes under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).

However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id.* Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

Here, the notice provided for by the Settlement Agreement meets the criteria set forth in Rule 23. *See* ECF No. 38-1, Exs. B, C, and D (Long Form, Email, and Postcard Notices). The Settlement provides for direct and individual notice to each Class Member,

to be sent via email or first-class mail. *Id.* ¶ 70(a). The direct email and U.S. Mail notice proposed here is consistent with notice programs approved by other courts. *See Stott v. Cap. Fin. Servs.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). Not only will Class Members receive individualized notice via email or first-class mail, *id.* ¶ 71, for those Settlement Class Members for whom DaVita does not have an address or email address, notice will be provided by publication. *Id.* ¶ 68. And all versions of the settlement notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 75. The Settlement Administrator will also make a post office box and toll-free telephone number available by which Settlement Class Members can seek answers to questions about the Settlement. ECF No. 38 at 24.

The Court also finds that the notices themselves are clear and straightforward. They define the Settlement Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested service award for the class representatives as well as the amount that proposed Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone

number of Class Counsel. *See* ECF No. 38-1 at Exs. B, C, and D; *see also* ECF No. 38 at 23.

For all of these reasons, the Court concludes that the proposed notice plan satisfies due process. Accordingly, the notice process is approved.

## IV. Class Counsel

When certifying a class, a court "must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing class counsel, the Court:

> (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1). The Settlement Agreement lists as class counsel Bart D. Cohen of Bailey Glasser, LLP; J. Gerard Stranch, IV, of Stranch, Jennings & Garvey, PLLC; Gary Klinger of Milberg PLLC; Maureen Brady of McShane & Brady, LLC; Mark Reich of Levi & Korsinsky LLP; and Marc Edelson of Edelson Lechtzin LLP. ECF No. 38-2 ¶ 21(m).

Previously, the Court appointed Messrs. Cohen, Stranch, and Klinger as Interim Lead Co-Class Counsel and appointed Ms. Brady, Mr. Reich, and Mr. Edelson to Plaintiffs' Executive Committee. ECF No. 21 at 2. At this juncture, the Court understands that Messrs. Cohen, Stranch, and Klinger, who submitted a Joint Declaration in support of the Motion and who have articulated their credentials to serve as class counsel, *see* ECF No. 38-2 ¶¶ 3-16, seek to be appointed in that role. *See id.* ¶ 18 (averring that

"Proposed Class Counsel have conducted all of the work necessary to prosecute this litigation thus far, and we stand ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of costs) necessary for advancing the claims of Plaintiffs and the proposed class.").

All three attorneys possess extensive experience leading complex data breach, data privacy, and consumer class action litigation. ECF No. 38-2 ¶¶ 3-7 (detailing Mr. Cohen's qualifications); *id.* ¶¶ 8-11 (detailing Mr. Stranch's qualifications); *id.* ¶¶ 12-16 (detailing Klinger's qualifications). This record leaves no reason for the Court to doubt that counsel have sufficient experience in class actions; further, their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment. Therefore, the Court finds that it is appropriate to appoint Bart D. Cohen, Gerard Stranch, IV, and Gary Klinger as class counsel.

**CONCLUSION**

For the reasons set forth herein, Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 38, is **GRANTED**. The parties' Settlement Agreement, ECF No. 38-1, including the proposed notice plan and forms of notice to the Class, is preliminarily approved as fair and reasonable.

Accordingly, it is **ORDERED** that:

1. The Court preliminarily certifies a settlement class pursuant to Fed. R. Civ. P. 23(e) consisting of:

> All U.S. persons whose Personal Information was potentially accessed without authorization in the Ransomware Attack.

2. Plaintiffs Godwin Iloka, Julian Jenkins, Gregory Leafe, Brenda Pearson, and Lydia Perryman are preliminarily approved as the Class Representatives.

3. Bart D. Cohen of Bailey Glasser, LLP, J. Gerard Stranch, IV, of Stranch, Jennings & Garvey, PLLC, and Gary Klinger of Milberg PLLC, are preliminarily approved as Class Counsel.

4. Epiq Class Action & Claims Solutions, Inc., is preliminarily approved as the Settlement Administrator.

5. The form, contents, and method of notice to be given to the Class as set forth in the Settlement Agreement and attached to the Motion at ECF No. 38-1 at Exhibits B, C, and D, are approved.

6. The Court preliminarily approves the following settlement timeline for the purposes of conducting the notice plan, settlement administration, claims processing, and other facets of the proposed Settlement:

| ***Event*** | ***Deadline*** |
|---|---|
| **From Order Granting Preliminary Approval** | |
| PFC provides list of Class Members to the Settlement Administrator; Settlement Administrator provides W-9 to counsel for the Parties | Within 7 days after entry of this Preliminary Approval Order |
| Long Form and Short Form Notices Posted on the Settlement Website | Within 14 days after receiving the list of Class Members |
| Notice Deadline | Within 30 days after receiving the list of Class Members |
| Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and | At least 14 days before the Objection Deadline |

| | |
|---|---|
| Class Representative Service Awards | |
| Objection Deadline | Within 90 days after entry of this Preliminary Approval Order |
| Exclusion Deadline | Within 90 days after entry of this Preliminary Approval Order |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | Within 104 days after entry of this Preliminary Approval Order |
| Claims Deadline | Within 120 days after entry of this Preliminary Approval Order |
| Initially Approved Claims List | Within 148 days after entry of this Preliminary Approval Order |
| **Final Approval Hearing** | No earlier than 180 days after entry of this Preliminary Approval Order |
| Motion for Final Approval | At least 14 days before the Fairness Hearing |
| **From Order Granting Final Approval** | |
| Effective Date | 35 days after Order Granting Final Approval (if no appeal) |
| Settlement Website Deactivation | 120 days after Order Granting Final Approval |

7. The parties shall contact the Court's chambers to set a date for the fairness hearing within 7 days of the entry of this Order.

DATED: August 21, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge